ADELINE WAITE *vs.* WILLIAM FRISBIE, Executor, and others.

AUGUSTUS F. WAITE *vs.* SAME.

February 13, 1891.

**Will—Signature Obtained by Misrepresentation of Contents.**—Where a will is not read by nor to the testator, and it has been prepared by another person from instructions given by the testator, and is then signed upon an assurance that it expresses what he desires, if the language inserted is not the language of the instructions, and if it does not make, in legal effect, the provisions which the testator apparently desired, it is not his will.

**Same—Signature by Another for Testator—What Direction Requisite.**—Under the provision in Gen. St. 1878, *c.* 47, § 5, that a will shall be "signed at the end thereof by the testator, or by some person in his presence and by his express direction," mere knowledge on the part of the testator that another is signing or has signed, and assent to or acquiescence in it, there being no previous direction, to be inferred from looks or gestures or other ambiguous token, is not enough. If the previous express direction is given by gestures, they must be unambiguous as words.

Appeals by the executor and legatees named in the instrument propounded as the last will of Josephine O. Frisbie from an order of the district court for Blue Earth county, *Buckham, J.*, presiding, (acting for the judge of the 6th district,) granting a new trial.

*E. P. Freeman, Pfau & Young*, and *Spencer, Washburn & Shoemaker*, for appellants.

*Daniel Buck, M. S. Wilkinson*, and *D. F. Morgan*, for respondents.

GILFILLAN, C. J. This is a contest over the will of Josephine O. Frisbie presented for probate. The will was allowed in the probate court, and an appeal was taken by the contestants to the district court. In that court two issues were framed for trial by a jury: (1) Was Josephine O. Frisbie of sound and disposing mind at the time of the execution of the alleged will? (2) Is the instrument now offered for probate the will of Josephine O. Frisbie? The jury answered both of these questions in the affirmative. The district court granted the contestants' motion for a new trial, and from the order granting it the proponent appealed to this court. The court below based its decision on errors of law occurring at the trial, and not on the sufficiency of the evidence to sustain the findings. One ruling at the trial involved the question whether, on the evidence, there was a case upon which a finding in favor of the will could be sustained. That was a request, refused by the court, that the jury be instructed to find a verdict in favor of contestants. After a careful examination of the evidence, we think the request ought to have been granted. Assuming the instrument to have been signed by the deceased or by another by her express direction, as required by the statute, still the instrument is not such an expression of her wishes as to be entitled to be regarded as her will. The circumstances were somewhat peculiar. Mrs. Frisbie was very ill and weak, so much so as to be unable to speak or to indicate her wishes unless by gestures, at the time of and for some minutes before the signing; and at the time of giving directions for the will she could barely speak. She was in a dying condition, and died within about 10 minutes after the signing. It is evident that when dictating what she desired put in the will, and while it was being prepared, and when presented to her for execution, she was supposed to be about to die. In such cir-

cumstances very great care is required to make sure that the instrument really expresses the will of the person signing, and not merely the inferences of the person drafting it or of the by-standers, as to what the party's wishes are. Stating the evidence as strongly as possible in favor of the will, about an hour and a quarter before she died Mrs. Frisbie communicated to Mrs. Wiser, who was with her and remained with her to the end, her desire to make a will, and the disposition she desired to make of her property, and Mrs. Wiser stated these to Dr. Frisbie, the husband of deceased, and he wrote out accordingly as it was stated to him. The instrument he prepared in the form of a will, except the concluding clauses, contained five items, the first four making minor bequests to others, the fifth making him residuary legatee. The instrument was then read over to deceased, and she declined to sign it, because she desired in it a provision that, if her brother should come to want, she wanted the doctor (the residuary legatee) to take care of him. To prepare and insert such a clause a lawyer was sent for, and Mrs. Wiser informed him what Mrs. Frisbie desired, and he added, not in the precise words of the deceased, but in his own, expressing what he understood was desired, a sixth clause or paragraph. This clause did not change in any way the legal effect of the instrument as it was when deceased declined to sign it. It made no charge on the estate, and imposed no duty or liability on any one. It was merely a request to her husband to see that her brother was taken care of so as not to become a public charge, in case he should come to want. The clause was not read by nor to her, nor was it explained to her. She was assured that what she desired about her brother was in the instrument, and then what is claimed as the signing took place. If it were clear that the words in which the sixth clause is expressed were her words,—that they were chosen by her or adopted by her,— the instrument would be none the less her will, although the words did not effect the purpose she may have intended. But it is clear from the testimony of Mrs. Wiser, who received Mrs. Frisbie's instructions and communicated them to the lawyer, that the language of the deceased was not inserted in the clause. The witness and the lawyer may have thought it substantially identical,—that it ex-

pressed the same idea. But the words of the clause are not the words of the deceased, nor, as the words of the latter are testified to by Mrs. Wiser, do they express the same idea. The words to her indicate a desire on the part of the deceased to make a positive provision for her brother in the contingency mentioned, while the words of the clause make no such provision, but leave the matter of taking care of the brother to the option of the husband.

Another question raised in the case is, in view of a second trial, proper for us to consider. When the instrument, as it is presented for probate, was fully written out, the deceased was unable to sign it; she was unable to speak or express her wishes, unless by gest-. ures or looks. The testimony on the part of the proponent is that it was suggested to her that her name should be signed by another, to which she assented, as those witnesses understood her, by a nod. Her name was signed by the person indicated, and, it being suggested to her to make her mark, she placed her hand on the hand of the person who had signed her name, in which he held the pen, and he made the mark. On the part of the contestants the testimony is that the husband of deceased told the person to sign her name, and after that was done he placed her hand on that of the person so signing, and the latter made the mark. The court below instructed the jury: "In so far as the manual effort of signing the will is concerned, it is not necessary that she should have taken any part in the actual formation of the characters or the drawing of the cross or mark. The physical effort might be done by some one else. But it is necessary that her intelligence and understanding should have gone with the act. If that was done, the amount of physical effort she put into the act was immaterial. It is immaterial whether or not she laid her hand on the hand of Mr. Pitcher at the time he wrote her name or made the mark; it is entirely immaterial whether or not her fingers were touching the pen at that time; but it is material and necessary that she should have known what was being done, and have assented to it as her way of signing the will. If the testator's knowledge and consent accompanied the act of signing the will, it is sufficient, although she may not have had any part in the physical effort of signing."

We think the substance of what the court intended, and what the jury would understand, was that although she did not sign the will either by writing her name or making her mark, if it was done by another person with her knowledge and assent, that would be sufficient. It is a rule in respect to the execution of wills that the requirements of the law shall be strictly complied with. The circumstances under which such instruments are executed, or claimed to have been executed, are frequently such that a loose construction of what the party did or intended to do,—a substitution of anything else as an equivalent for what the law requires,—would incur the danger of accepting as his will an instrument not really intended as such. The statute (Gen. St. 1878, *c.* 47, § 5,) provides that a will shall be "signed at the end thereof by the testator, or by some person in his presence and by his express direction." The requirement that the signing by another shall be by "express direction" seems to exclude mere implied assent to, or acquiescence in, or subsequent ratification of, the signing. Chief Justice Gibson in *Greenough* v. *Greenough*, 11 Pa. St. 489, construing a similar statute in Pennsylvania, said: "Why use emphatic words if there was no design to distinguish between an express and an implied direction? Though express direction may be proved by presumptive evidence, it follows not that a subsequent act of ratification by the mark is presumptive evidence of it. A direction precedes the act to be done in obedience to it; and in this respect a direction expressed in words differs from a direction implied from subsequent assent. * * * As signing by the testator's assent would have been good at the common law, the statute was enacted, not to authorize it, but to regulate the evidence of it, by requiring more than a wink or a nod, or a word not less ambiguous, and therefore not less liable to misconstruction or misrepresentation. The purpose of it was to have a straightforward direction expressed in terms which would leave no pretence for the touch of an insensible or dead man's hand to give color to an artful tale told by willing witnesses. In other transactions the mark is sometimes used as a badge of assent, but the assent required by the statute is to be signified, not by a badge attached to the name, but by a direction to attach the name to the paper." We have made so

large a quotation from the opinion in that case because it expresses what we think the statute intends, and also indicates some of the dangers the statute was intended to guard against. The direction to sign must precede the act of signing. Mere knowledge by the testator that another has signed or is signing, without previous direction, and assent to or acquiescence in it, to be inferred from looks, or a nod of the head, or motion of the hand, or other ambiguous token, is not enough. We do not mean that the express direction must be in words. A person unable to speak may sometimes be able to convey his wish that another sign his name as unequivocally by gestures as though he spoke the words; but the meaning of such gestures must be as clear and unambiguous as the words, and the act of signing must be in obedience to the direction thus conveyed. It follows from what we have said that mere assent or acquiescence, implied by, or to be inferred from, looks or gestures, when another suggests that A or B sign the name, is not such an express direction as the statute requires. The instruction was therefore erroneous.

Order affirmed.