FRANK McCOY, JR. v. MARY ANN CONRAD ET AL.

FILED MARCH 5, 1902.  No. 10,608.

Commissioner's opinion, Department No. 3.

1. **Probate of Will:** DISQUALIFICATION OF WITNESS: HEIRS AT LAW. In a contested proceeding for the probate of a will, the heirs at law of the alleged testator are not disqualified by the statute as witnesses to transactions and conversations with the deceased.

2. ———: TESTATOR'S SIGNATURE AFFIXED BY ANOTHER: BURDEN ON PROPONENT. When in a contested proceeding for the probate of a will, it is disclosed that the name of the alleged testator was affixed to the instrument in controversy by some person other than himself, it is incumbent upon the proponent to establish by unequivocal evidence that the deceased gave direction to such person for writing his name, consciously and explicitly, and in the free and voluntary exercise of his faculties.

ERROR from the district court for Saunders county. Tried below before SEDGWICK, J.  Affirmed.

Good & Good, Enos F. Gray and Charles H. Slama, for plaintiff in error.

G. W. Simpson, contra.

Ames, C.

This is a contest about the admission to probate of an alleged will, said to have been executed on the 9th day of September, 1896, in Saunders county in this state, where the purported testator resided then and at the time of his death. The grounds of contest are that the alleged testator was without testamentary capacity, and that the instrument in controversy was obtained from him through the exercise of undue influence, and without his conscious volition. At the time the document was made he was very old, and infirm in health, and at his death he left surviving him, as his sole heir at law, a married daughter, Mary Ann Conrad, who is the contestant in this proceeding. By the alleged will his estate is divided between this daughter and one Frank McCoy, his nephew, who is the proponent in the contest. The probate of the instrument was refused both by the county court and, upon appeal, by the district court, and the case is now brought here by the proponent by proceedings in error.

On the trial before Judge Sedgwick and a jury, the daughter was permitted, over the objection of the proponent, to testify concerning certain conduct and conversations of the deceased indicative of his mental condition at and about the time of the alleged execution of the proposed will. The first and one of the most important questions presented, is whether she was a competent witness for the purpose. The statute provides (Code, sec. 329) that "no person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness, unless," etc. If the statute is to be so construed as to exclude heirs at law as witnesses in cases of contest about the probate of alleged wills of the deceased, it is manifest that such persons will be put at great disadvantage in litigations of that kind. The execution of the will might be extorted by threatened

or actual physical violence in their very presence, and, their lips being sealed, they would be helpless to prevent, or even effectually to protest against, the consummation of the outrage. And so it would turn out that, to repeat an often quoted phrase, that which was evidently intended as a shield for the protection of the testator's estate would be converted into a sword for its destruction. We do not think that such an interpretation of the statute can be adopted, or, to continue the figure of speech, that the shield ought at any time or under any circumstances to be discarded or lowered. After the will of a decedent has been established, the devisees and legatees are properly regarded as within the protection of the statute, but, so long as they are merely the proponents of a contested alleged will of the deceased, their interests are as clearly adverse to those of the heirs at law or other acknowledged representatives of the decedent as are those of other litigants seeking to recover against his estate on account of any other transaction had with him in his lifetime. In such litigation the plaintiffs or proponents, being named as devisees or legatees, as the case may be, are assailing the estate with the view of the appropriation of it, or of a part of it, to their own uses. Any such assailants are, therefore, clearly excluded by the statute, and so, of course, is an executor in the proposed will. If, in a case like the one at bar, the heirs at law are also excluded, we reach the surprising conclusion that the interests of all the parties, being mutually adverse, the deceased has no representative not disqualified as a witness concerning any transaction or communication touching the matter in controversy. To so hold would, as it seems to us, be a trifle absurd. But the court is not driven to so impotent a conclusion. The case was tried below with great care and deliberation, and the district judge took the unusual pains of preparing and filing a written opinion in support of his order overruling a motion for a new trial. Inasmuch as that document meets with our full approval, and, as respects the point under discussion, we can add nothing to it by way either of argument or of illustration, we reproduce it, as follows:

"In this motion for a new trial it is urged, first, that it was error to allow Mrs. Conrad, the contestant, as against the proponent of the will, to testify in regard to transactions and conversations had between the testator and herself. In order to justify excluding this testimony three things must concur: First, the witness offered must have a direct, legal interest in the result of the litigation; second, the evidence offered must relate to transactions and conversations had between the witness and deceased; third, the evidence must be offered against one who is a representative of the deceased person. If these things concur, the evidence must be excluded, unless it comes within the exception named in the statute.

"On the hearing of this motion it was earnestly contended on the one side that the evidence offered related to transactions and conversations between the witness and the deceased, and as earnestly contested on the other side. At the trial the evidence was admitted on the ground that the proponent of the will was not the representative of the deceased, within the meaning of the statute, and the other ground of objection was not much discussed or considered. Of course, if the proponent of the will is not the representative of the deceased, within the meaning of our statute, then the ruling complained of is correct. The word 'representative,' as used in section 329 of the statute, includes any person or party who has succeeded to the rights of the decedent, whether by purchase, descent or by operation of law. *Kroh v. Heins,* 48 Nebr., 691. Of course the question is whether he represents the deceased in the litigation in which the evidence is offered. The fact that he may be the general representative of the deceased will make no difference, unless he represents him in the question which is in dispute in the litigation. If an executor or an administrator is engaged in litigating some matter which is entirely foreign to the interests of the estate which he represents, the statute, of course, has no application. The statutes of the different states are so varied, and the decisions under them so numerous, that we must 'solve the

question presented without much reference to adjudications based on other statutes.' *Wylie v. Charlton,* 43 Nebr., 840, 850. The Michigan statute [Howell's Annotated Statutes, sec. 7545] provides that 'when a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, the opposite party, if examined as a witness on his own behalf, shall not be admitted to testify at all to matters which, if true, must have been equally within the knowledge of such deceased person.' In construing this statute in an action contesting a will, the court says: 'The contest is not between the estate, or the representative of the estate, and the proponent. The statute applies only when the estate is in some way one of the parties, and the heirs, assigns, devisees, or legatees are the others. * * * The only questions involved in this application are: Did the deceased in his lifetime make this will, and was he of sound mind and memory at the time? * * * The will does not increase or decrease the estate. The object of this statute is to prevent fraud and false swearing whereby estates become unjustly depleted in cases where no person on the part of the estate, except the deceased, has any knowledge of the facts necessary to sustain the claim in favor of the estate, or to make good the defense of the estate, when unjust claims are attempted to be enforced against it, and we see no occasion for extending the scope of the statute by judicial construction. It is limited in its reason and spirit by fair construction to contests on litigation upon claims between other persons and the deceased, existing prior to his death; to such suits and proceedings as the deceased would have been, if living, a necessary party, and since which his heirs, devisees, and legatees, personal representatives or assigns, are compelled to prosecute or defend for him in his place.' *Brown v. Bell,* 24 N. W. Rep. [Mich.], 824.

"I think this reasoning applies to our statute. If a party is so placed in a litigation that he is called upon to defend that which he has obtained from a deceased person, and

make the defense which the deceased might have made if living, or to establish a claim which the deceased might have been interested to establish if living, then he may be said, in that litigation, to represent a deceased person; but where he is not standing in the place of the deceased person, and asserting a right of the deceased which has descended to him from the deceased (that is, where the right of the deceased himself, at the time of his death, is not in any way involved), and the question is, not what was the right of the deceased at the time of his death, but, merely to whom has that right descended, in such a contest neither party can be said to represent the deceased. Our statute differs from the statutes of other states, in that it uses the word 'representative' only, and I think its purpose is manifest. The intent is not to allow a party who is interested in litigation to testify to statements or actions of a deceased person in derogation of the right of the deceased person, and the reason is because the deceased person, who alone might contradict him, can not now be heard. That is, in the language of the Michigan court, the statute is 'limited in its reason and spirit by fair construction to contests on litigation upon claims between other persons and the deceased, existing prior to his death; to such suits and proceedings as the deceased would have been, if living, a necessary party, and since which his heirs, devisees, and legatees, personal representatives or assigns, are compelled to prosecute or defend for him in his place.'

"I think the cases cited by the proponent in his brief are not in point. In *Re Eysaman's Will*, 20 N. E. Rep., 613, the evidence of a legatee under the will was offered. The heirs and the next of kin were contesting. The statute did not allow one interested to testify in his own behalf, 'against one claiming under a person deceased at the time of the trial.' There can be no doubt that the legatee was interested, and was offering to testify in his own behalf, and that the heirs and next of kin were, at the time of the trial, claiming under a person deceased. The other

New York case cited (*In re Dunham's Will*, 24 N. E. Rep., 932) is precisely similar and is decided upon the authority of the case *In re Eysaman's Will*. In *Re Goldthrop's Estate*, 62 N. W. Rep. [Ia.], 845, the court places its decision upon the words of the Iowa statute [Code, 1882, sec. 3639], which contains the words, 'against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee,' etc.; and the court says: 'The case of *Brown v. Bell* was decided under the statute of Michigan, which is materially different from our own.' This difference between the statutes is apparent, but not more so than the difference between our statute and that of Iowa, so I think the Iowa case is plainly distinguishable from the one at bar; and I can not refrain from saying that the reasoning in the Iowa case is not satisfactory to my mind, and that the thought is suggested that perhaps the court was influenced by the decisions in *Blake v. Rourke*, 38 N. W. Rep. [Ia.], 392 and *Smith v. James*, 34 N. W. Rep. [Ia.], 309, both of which cases seem to have been under a very different statute. In the Wisconsin case (*In re Goerke's Will*, 50 N. W. Rep., 345), it was held that proponent and beneficiary could not testify as to what took place between him and the testator at the time the will was executed, under a statute which provides that no person in interest shall be a witness respecting any transaction or communication by him with the decedent. The discussion in the opinion is as to whether the matters testified to related to transactions or communications, and the point involved in the case at bar is not discussed. Indeed, it would not seem that this point could arise under their statute. These observations will apply, also, in *Re Valentine's Will*, 67 N. W. Rep. [Wis.], 12. The Indiana statute is so radically different from ours that authorities construing that statute are of no assistance whatever in determining the point under consideration. I think that the decisions of our court are in harmony with the ruling complained of, as shown in the contestant's brief. In *Clark v. Turner*, 50 Nebr., 290, it is said that the proponent of a will which

has been denied probate is not a person charged with the duties or powers of a personal representative of the deceased. I think that the evidence complained of was properly admitted, without regard to the question of whether or not it involved any transaction or conversation, within the meaning of the provision of the statute."

There are a great number of errors assigned, both with respect to the giving and the refusal of instructions by the court, and with respect to the rulings of the court upon the admission and rejection of testimony, which we do not think it necessary to decide or discuss, because we think that the decisive point is raised by an exception to the eighth instruction given by the court of its own motion, which is as follows: "If, after the paper in question had been prepared, Frank McCoy, deceased, being then illiterate and unable to write his name, at the request of some other person, assented to the signing of his name to the paper by Mr. Frick, and, while Mr. Frick held the pen in his hand, the said Frank McCoy, deceased, put his hand also upon the penholder while Mr. Frick made a cross or mark, and said Frank McCoy, deceased, so acted and assented without understanding the nature of the transaction, and without intending thereby to sign and execute the will, this would not be a sufficient signing to comply with the law." The statute enacts (Compiled Statutes, 1901, ch. 23, sec. 127) : "No will made within this state, except such nuncupative wills as are mentioned in the following section, shall be effective to pass any estate, whether real or personal, nor to charge or in any way affect the same, unless it be in writing, and signed by the testator or by some person in his presence and by his express direction," etc. Construing this statute in *Murry v. Hennessey,* 48 Nebr., 608, this court say: "Thus it will be observed that the legislature, in unequivocal language, has made it imperative that a will, other than a nuncupative, when not signed by the testator himself, must, in addition to other requirements, be signed by some person in his presence and by his express direction, or the instrument will be in-

valid. Mere knowledge of the testator that his name is being signed by another, or that the signing was acquiesced in, or assented to, by the testator will not be sufficient. The statute exacts more than this. It requires that the signing of a will by another must be done in pursuance of the previously expressed direction of the testator. The statute is meaningless if this is not its scope and purpose. The same construction has been placed upon similar statutes in other states. *Waite v. Frisbie,* 45 Minn., 361; *Greenough v. Greenough,* 11 Pa. St., 489; *Asay v. Hoover,* 45 Am. Dec. [Pa.], 714; *Grabill v. Barr,* 47 Am. Dec. [Pa.], 420; *Snyder v. Bull,* 17 Pa. St., 60. In the Minnesota case the testatrix's name was signed by another person without her express direction, and on being requested to make her mark, she placed her hand on that of the one who signed her name, and he made the mark. The court, in construing the statute of that state which declares that a will shall 'be signed at the end thereof by the testator, or by some person in his presence, and by his express direction,' held that the will was invalid for want of proper execution. The case at bar is quite analogous to that. The will was prepared by Mr. Hockenberger, at the request and suggestion of Mr. Murry, the beneficiary. The person who drew the will signed Bridget Murry's name thereto, without being directed by her to do so. It is true her mark was made, but the evidence shows that it was made by Mr. Hockenberger, and that Mrs. Murry merely, at his suggestion, touched the pen while the mark was being affixed to the instrument. The signing not being at her express direction, the will was not executed as the law requires, and it is for that reason alone invalid." Now, as has already been said, it is undisputed that the supposed testator in this case was, at the time of the alleged execution of the instrument in controversy, very old, and extremely infirm, both in body and mind. It will be observed that the putting of the hand upon the pen while a cross-mark is being made is of no importance. All that such an act would indicate would be an assent to or recognition of or, at most, a

ratification of, the signature after it had been written. But this would not satisfy the statute, which requires a previous express direction to write the name. There are three witnesses who testified as to what took place with respect to writing it. The first is Frick, the attorney who wrote the instrument and supervised its execution. His testimony is as follows:

"Int. 35. You may state how it was that you came to sign the will, and place thereon the words 'Testator's name written by J. E. Frick at request of testator.'"

"Ans. to Int. 35. It occurred in this way: When the will was ready to be signed, I spoke to Frank about signing, and Tom spoke up and said that, owing to Frank's paralyzed condition, he didn't think he could write his name. I said that any one could sign his name at his request, and then Tom asked Frank whether Frank wanted me to sign his name to the will; and, after repeating it to him several times, Frank nodded his head, and I wrote his name to the will, with the statement as it appears."

"Int. 37. I will ask you (state fully) whether or not Frank McCoy requested you to sign his name to the will; that is, you may state what he said regarding it."

"Ans. to Int. 37. The matter occurred as I have detailed in the last question. Frank made no request of me in words, and in no other way, except as explained in the previous question."

The only two other persons present were the witnesses to the will,—Thomas McCoy, the father of the proponent, and one Mercer. The examination of McCoy in reference to this matter is as follows:

A. He signed it or made his mark when the will was finished.

Q. Who made his mark?

A. Mr. Frick.

Q. How did he come to do that?

A. With my brother's permission.

Q. How did he come to do that?

A. Frick says, "Can you write?" and he says, "No." He

says, "With your permission," he says, "can I write your name?" and he says, "Yes; write it."

Q. Who said to write it?

A. My brother.

Q. Then what did Frick do?

A. He did write it.

The testimony of Mercer upon the point is as follows:

Q. Whose signature was first attached to the will?

A. Mr. McCoy's, deceased.

Q. Just explain to the jury how that was done.

A. Mr. McCoy could not write, if my memory is right, and he asked Frick to write for him; and he took the pen and made a cross, and Frick held his hand while he made the cross, like that (indicating).

This last witness attempted only to give his memory, which was evidently very vague, about a transaction in which he was not pecuniarily interested, and he is clearly mistaken. Neither Frick nor McCoy testified that the decedent made an express or formal request that the former should write his name, or, in the language of this witness, "asked Frick to write for him." The most that can be made out from the testimony of either or both is that McCoy solicited and obtained from the deceased passive permission for Frick to write it; and the testimony of the former, taken alone, is so far from establishing that such consent was intelligently or consciously given, that it very forcibly supports the contrary inference. At all events, if Frick is to be believed, the consent, if any, was hesitatingly and reluctantly given after repeated solicitation. That, in the then physical and mental condition of the decedent, such repeated solicitation by the brother, who, as the testimony shows, had practically dictated the contents of the instrument, and in the presence of the attorney who had drawn it, operated as a restraint upon will, is a reasonable presumption. This presumption, we think, is not overcome by the offhand and too little qualified testimony of the witness McCoy, who, however, does not deny the solicitation, but puts into the mouth of the deceased

words which Frick, whose business it was to attend to the matter, evidently did not hear.  In other words, a verdict in favor of the proponent could, in our opinion, have been successfully assailed as not being supported by sufficient evidence.  The burden was upon the proponent to show by a preponderance of evidence that the instrument in suit was the free and conscious will of the decedent.  That the deceased was under the constant guidance of his brother during all the time that the preparation of the document was in progress is undisputed, and it was the brother who was prompt to suggest the inability of the deceased to sign his name, and to take the last detail of the business out of his hands by procuring his consent to the writing of his name by the attorney.  According to his testimony, his own solicitations were supplemented by Frick, and between them the hesitation of the deceased was overcome so far as to permit the writing of his name, but Frick says that he made no request in words, and signified his assent, if at all, only by nodding his head,—an act which, done by a feeble and paralytic old man, is of little significance.  We think there is a very wide difference between the "express direction" of the statute, and a reluctant, passive and hesitating consent, such as this evidence discloses.  We are not unmindful of the rule that a conclusion of fact drawn by a jury from conflicting evidence will not be disturbed, although even this rule must have its limitations and qualifications, if not its exceptions.  Neither do we wish to be understood as saying that a direction for writing his name, given by a testator to another, is necessarily invalidated by such direction having been suggested to, or even requested of, the decedent.  But we are of the opinion that the word "express" is used in the statute, not only in contrast to the word "implied," but, to some extent, by way of emphasis, and that, in a contest such as is now under consideration, it is incumbent upon the proponent to show by unequivocal evidence that the testator gave direction for writing his name consciously and explicitly, and in the free and voluntary exercise of his faculties; and

we think that the above-quoted testimony, which is all the evidence upon the subject disclosed by the record, falls short of this measure. If this conclusion is correct, none of the matters assigned for error are material, because the verdict rendered is the only one that could have been upheld by the record.

It is recommended that the judgment of the district court be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For reasons stated in the foregoing opinion, the judgment of the district court is

· AFFIRMED.