## LENNIE S. BRENGLE *vs.* DANIEL TUCKER, Administrator, Etc.

*Invalidity of Will Subscribed by Only One Witness.*

While a man was lying ill on a bed in a hospital, and just before he was taken to the operating room, he asked the attending physician for a piece of paper and pencil, and wrote a short testamentary disposition of his property. He handed the paper to the physician and asked him to sign it, which was done. Then he gave the paper to the petitioner, who was at hand, in the presence of other persons, who knew that the paper was a will. The man died after the operation. *Held,* that this paper cannot be admitted to probate as a will, since Code, Art. 93, sec. 317, expressly provides that unless a will be attested and subscribed in the presence of the testator by two or more credible witnesses, it shall be utterly void and of none effect.

*Decided January 11th, 1911.*

Appeal from the Orphans' Court of Frederick County.

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke, Pattison and Urner, JJ.

*H. Dorsey Etchison,* for the appellant.

The Court declined to hear counsel for the appellee.

BURKE, J., delivered the opinion of the Court.

Charles A. Tucker, of Frederick County, died in the Hebrew Hospital in Baltimore City on the 26th of July, 1910, possessed of quite a large estate consisting of real and personal property. On the afternoon of July 25th, 1910, he wrote and signed a paper in the following words, which he immediately delivered to Lennie S. Brengle, the appellant: "In the event of my death the houses and ground rents shall revert to Lennie Brengle, of Frederick. The balance in Frederick, Md., to be shared outside to the cousins in Cumberland, Md."

This paper writing was witnessed and subscribed by F. H. Hermann, M. D. On July 28th, 1910, the paper was left for safekeeping in the Office of the Register of Wills of Frederick County. The Orphans' Court for that county being of opinion that Charles A. Tucker had died intestate, granted letters of administration upon his estate to Daniel Tucker, the appellee, who qualified and proceeded to administer the estate. On August 8, 1910, the appellant filed a petition in that Court asking that this paper writing be admitted to probate as the last will and testament of Chas. A. Tucker, deceased, and that letters of administration upon his estate be granted to some suitable person, inasmuch as no executor was named in the alleged will. The petition further stated that the letters granted to the appellee should be revoked. On August 19th, 1910, the appellant filed an amended petition asking for the probate of the paper writing as the last will and testament of Charles A. Tucker and setting out some facts additional to those contained in her first petition.

The circumstances under which the writing was executed and upon which it is contended that it should have been ad-

mitted as the last will and testament of the deceased are fully
set forth in the original and amended petitions. In the
original petition it is alleged that "the said Charles A.
Tucker was taken to said hospital by his physician, Dr. F. H.
Hermann, on the morning of said July 25, 1910, and be-
tween one and half-past one o'clock your petitioner was tele-
phoned for by said Dr. Hermann to come to the hospital, and
in response to that summons your petitioner went at once;
upon arrival there she consulted with Dr. Hermann and his
assistant, Dr. Bagley, and the nurse, Miss Duke, about Mr.
Tucker's condition; she was informed by them that they
were watching the patient carefully and considering the ad-
visability of an operation; this watching occupied the time
until nearly three o'clock, when Dr. Hermann called your
petitioner out of the room where Mr. Tucker was and in-
formed her that an operation had been decided upon; that
it is imperatively necessary and would have to be performed
without any delay, and desired to know if she, your peti-
tioner, would consent; in reply to this advice of Dr. Her-
mann your petitioner said that if he, Mr. Tucker, was satis-
fied she was; thereupon all the parties, including your peti-
tioner, entered the sick room, and Dr. Hermann went to
where Mr. Tucker lay on the bed and told him that the only
hope he had was to be operated on, and that hope was poor;
he further told him that he supposed he realized his condi-
tion, and Mr. Tucker replied, 'yes'; Mr. Tucker then asked
Dr. Hermann to set him up in bed, and this was done; then
Mr. Tucker asked Dr. Hermann for a piece of paper and
pencil and Dr. Hermann immediately took his prescription
book out of his pocket, tore a leaf out, handed it to Mr.
Tucker, together with a fountain pen. Mr. Tucker, while
sitting up in bed, immediately laid the piece of paper given
him upon the prescription book and wrote the paper writ-
ing mentioned in the first paragraph of this petition; he
then handed the paper to Dr. Hermann which he had writ-

ten and which was still on the book, retaining a partial hold of said book and paper and asked Dr. Hermann to sign it. and as soon as Dr. Hermann signed it he, Mr. .Tucker, immediately gave the paper one fold, and handed it to your petitioner, and without anyone in the room knowing the contents of said paper except Dr. Hermann, who was leaning over Mr. Tucker while he was writing said paper, your petitioner not even knowing its contents, your petitioner took said folded paper as soon as given to her by Mr. Tucker, placed it in her purse; as soon as this paper writing was thus handed, as described, to your petitioner, the doctors and nurse immediately moved the bed upon which Mr. Tucker was lying out of the room without a minute's delay and placed it on the elevator and was taken to the operating room; Dr. Hermann and your petitioner walked up the steps and was taken to a room next to the operating room, from which your petitioner watched the operation, which was begun immediately upon his arrival in the operating room; from the time Mr. Tucker was taken to the operating room until he was returned to his sick room about a half an hour elapsed; your petitioner was permitted to see Mr. Tucker and talked with him twice between four o'clock and midnight of that same day after the operation was performed, and at midnight when your petitioner left him; this was the last time she saw him alive."

The amended petition set out substantially the same facts, and in addition thereto alleged that the persons present had a general knowledge that the deceased in writing the paper was endeavoring and attempting to make his last will and testament, and that "the said paper writing is the last will and testament of Charles A. Tucker, and that the said Charles A. Tucker made every effort in his power to have the same in legal form and properly witnessed, but that the said Charles A. Tucker being at the time the said will was made in immediate fear of death, though of sound and disposing mind, was prevented by death from completing all the for-

malities usually necessary in such instruments; that the said Charles A. Tucker at times innumerable expressed his intention of devising all of his estate, both real and personal, to your petitioner and to his cousins, who reside in the City of Cumberland, Md., and had expressed himself as being absolutely opposed to any relative on his father's side receiving one penny of his estate; that the said Charles Tucker, when he made his last will and testament, carried out his said intentions without any intimidation and without any pressure being brought to bear upon the said Charles A. Tucker; that the said will was witnessed at the request of said Charles Tucker by the said Dr. Hermann on the face of the said paper, and by your petitioner and others, all of whom were in the room at the time the same was made and in the presence of the said Charles Tucker, although they failed to sign their names thereto as witnesses."

Both the original and amended petitions were answered by the appellee, and the Court, after hearing, passed an order dismissing both petitions; but ordered the costs of the proceeding to be paid out of the estate of the deceased. This appeal was taken from that order.

On these facts the single question presented is this: Is the paper writing mentioned the last will and testament of Charles A. Tucker? Undoubtedly he intended it to be, and if it is not great loss will fall upon the appellant, as he evidently intended and attempted to give her a considerable portion of his estate. This is not a question upon the construction of a valid will, where the intention of the testator must prevail, unless it contravene some fixed rule or policy of the law. The simple inquiry is whether the formalities prescribed by law in the execution of wills have been complied with. All the authorities hold that these must be complied with or the instrument will be invalid and the property will descend as if no will had been made. Therefore, the failure of the testator's intention and the resulting loss to the appellant cannot be considered upon the question before us.

It is admitted that the paper is invalid as the last will and testament so far as it concerns the real estate, but it is insisted that it is sufficient to pass personal property. In view of the positive and unambiguous declaration of the statute, and of the adjudged cases, it is difficult to see how this contention can be made. Precisely the same formalities are required in the execution of a will to pass personalty as are required in wills to pass real estate. *Article 93, sec. 317, Code 1904,* declares that: "All devises and bequests of any land, or tenements, or interest therein, and all bequests of any goods, chattels, or personal property of any kind, as described in section 314, shall be in writing and signed by the party so devising or bequeathing the same, or by some other person for him in his presence and by his express direction, and shall be attested and *subscribed in the presence of the said devisor by two or more credible witnesses or else they shall be utterly void and of none effect."*

To subscribe means that the witnesses shall sign their name to the same paper for the purpose of identification, and implies that attestation has been performed. The statute requires that the testator shall request the subscribing witnesses to attest his will; but it is not necessary that he should in terms ask them to sign, as other facts may constitute a legal request on his part. *Higgins* v. *Carlton,* 28 Md. 140; *Gross* v. *Burneston,* 91 Md. 383.

There is only one subscribing witness to this paper writing, and he was the only one who was asked by the deceased to attest the same. It is, therefore, clear that the provisions of the statute have not been complied with, and that the attempted devises and bequests are, in the language of the statute, "utterly void and of none effect."

This conclusion is fully supported by the cases of *The Trustees of the Western Maryland College* v. *McKinstry,* 75 Md. 189; *Gross* v. *Burneston, supra; Lindsay* v. *Wilson,* 103 Md. 252, and other cases.

The statute was passed to remove uncertainty in the making of wills and to prevent the practice of imposition and fraud upon testators. To admit the appellee's contention would in effect be a nullification of the statute and a restoration of the law as to personal property as it existed prior to the *Act of 1884, Chapter 293.*

> *Order affirmed, the costs in this Court to be paid by the appellant.*