WELCH et al. v. KIRBY et al. *

(Circuit Court of Appeals, Eighth Circuit. November 18, 1918.)

No. 5109.

1. WILLS ⬅︎289—CONTEST—BURDEN OF PROOF.

In a suit attacking the validity of a will subject to the laws of the state of Missouri, the defendants, as proponents of the will, assume the burden of proving the proper execution.

2. WILLS ⬅︎118—EXECUTION—ACKNOWLEDGMENT BY TESTATRIX.

Under Rev. St. Mo. 1909, § 537, declaring that every will shall be signed by testator or by some person by his direction, no particular expression or acts are required by the testator, where he signs by proxy; so, where testatrix signed by proxy, it was immaterial that she did not acknowledge the instrument to the witnesses.

⬅︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied February 17, 1919.

3. WILLS ⊚111(3)—DIRECTION BY TESTATRIX TO SIGN FOR HER—"UNDER DI-
RECTION OF TESTATRIX."
Where testatrix was blind, and signed her will by proxy, *held*, that the
one signing the will acted "under the direction of the testatrix," within
Rev. St. Mo. 1909, § 537, and such signature was sufficient.

[Ed. Note.—For other definitions, see Words and Phrases, First and
Second Series, Under the Direction of.]

4. WILLS ⊚111(3), 123(5)—EXECUTION—"PRESENCE OF TESTATRIX."
Where testatrix was blind, and subscription by witnesses occurred in
a room connected by an open archway with the room occupied by testa-
trix, so that she could have seen the same, had she not been blind, the
subscription was in the presence of testatrix, as required by Rev. St.
Mo. 1909, § 537.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series,
Presence of the Testator.]

Wade, District Judge, dissenting in part.

In Error to the District Court of the United States for the Western
District of Missouri; Arba S. Van Valkenburgh, Judge.

Action by W. C. Welch and another against George W. Kirby, ad-
ministrator of the estate of Mary E. Scott, deceased, and others. There
was a judgment for defendants, and plaintiffs bring error. Affirmed.

I. N. Watson, of Kansas City, Mo. (John B. Gage and Raymond E.
Watson, both of Kansas City, Mo., on the brief), for plaintiffs in error.

Dorsey A. Jamison, of St. Louis, Mo., and William T. Jamison, of
Kansas City, Mo. (Howard L. Jamison, of Kansas City, Mo., on the
brief), for defendants in error.

Before HOOK and STONE, Circuit Judges, and WADE, District
Judge.

STONE, Circuit Judge. Suit attacking validity of will subject to
the laws of the state of Missouri. From a judgment on a directed ver-
dict at close of plaintiffs' evidence upholding the will, plaintiffs bring
writ of error.

The peremptory instruction is attacked on the three grounds that
the legal execution of the will was not so clearly shown as to justify
a withdrawal of that question from the jury and that the evidence of
both mental incapacity and of undue influence was sufficiently sub-
stantial to require the finding of the jury upon each of those issues.

[1] Under the Missouri practice, in a cause of this character the
proponents of the will (defendants) assume the burden of proving the
proper execution of the will. At the conclusion of defendants' proof
upon this phase of the case plaintiffs demurred and were overruled,
after which they put in their evidence of incapacity and undue influ-
ence.

[2, 3] The statutes of Missouri (Rev. St. Mo. 1909, § 537) provide
that:

"Every will shall be in writing, signed by the testator, or by some person,
by his direction, in his presence, and shall be attested by two or more compe-
tent witnesses subscribing their names to the will in the presence of the
testator."

⊚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This will was not signed by the testatrix in person, but by another. Plaintiffs claim that the proof fails to show that such signature was by her express direction or adopted by her; that she acknowledged the paper after such signature to be her will to the attesting witnesses; that such signature or those of the attesting witnesses were made in her "presence."

A distinction is to be observed between a challenge of the paper presented as the will on the ground of fraud, because it was not the paper intended to be executed, on account of substitution, alteration, or deception, and between a challenge of it because not executed in the manner required by the statute. Here the sole attack in this respect is that the statutory requirements were not met. It is therefore a question of what the above statute requires and what was done in this instance. Where the signature is by proxy, as here, the statute requires that it be "by some person by his direction." The obvious construction of "by his direction" is that the testator shall by word or action clearly indicate to the proxy a desire to have his name signed to the instrument. The statute requires no particular expression or acts. Any signifying the above desire suffice. St. L. Hosp. Ass'n v. Williams, Adm'r, 19 Mo. 609, 612. Here the testimony is that the testatrix, who was blind, in the presence of the two witnesses and her attorney, who had drawn the will, suggested that a Mr. Hamilton be requested to sign for her. One of the witnesses endeavored to find Mr. Hamilton and ascertained that he was not in town. There was then some discussion between the attorney and testatrix, resulting in the suggestion that Dr. Ford be called. The witnesses are not clear as to the details of this discussion; one of them stating that the attorney suggested Ford, and asked the testatrix if he would be acceptable; the other stating that either the attorney or the testatrix made the suggestion. Both are clear that Dr. Ford was acceptable, and one of them went for him and brought him. Ford, who was a witness hostile to the will, testified that he had no knowledge of being wanted to sign for the testatrix until one of the witnesses came for him; that the attorney, in the presence of the witnesses and testatrix explained that he was wanted to sign her name to a paper which was her will, because she could not do so; that he did so without hesitation. Dr. Ford was the husband of the niece of the testatrix, who was a guest in their home at the time. There can be no question that all four men understood there in her presence at that time that Dr. Ford was carrying out the wishes of the testatrix. We think they were justified in so believing, and that the statute was in that respect fully met.

We are not impressed by the contention that it was necessary for the testatrix, after such signature, to acknowledge the paper as her will to the witnesses. Before Mr. Hamilton was sought, the attorney had, in the presence of the witnesses, stated to testatrix that he had her will, and asked if she desired the two persons present to witness it for her, to which she expressed assent. He then stated that, as she was blind, it would be necessary to read the will. This he did to her and the two witnesses; testatrix requesting the rereading of that portion thereof which is the cause of the present suit. It was also later

stated in her presence to Dr. Ford, when he came, that the instrument was her will. There can be no doubt that every one present clearly understood what the instrument was, and all but Ford had just heard its contents. It is difficult to see what purpose would be served by a formal declaration by testatrix after signature, unless the signature had been made outside her presence, so that a declaration afterwards could operate as an adoption thereof.

[4] The final contention upon this part of the case is that the signatures by Ford and the two witnesses were not in the "presence" of the testatrix within the statutory meaning. The facts are that there were two small rooms about 12 feet square, connected by an open archway of about half that width; that testatrix was in one room, and the signatures were written on a dining room table standing 3 or 4 feet beyond the archway, in the other room; that, had testatrix had her eyesight, she could have seen the attaching of the signatures from where she was sitting about 10 feet away. Under the circumstances we think the two rooms were, for practical purposes, one. Unquestionably the statute would have been satisfied, had she been able to see. No case in Missouri has directly defined the statutory "in the presence" of the testator. In two cases there are obiter statements as follows:

"The witnesses must subscribe their names in the presence of the testator in order that they may not impose a different will on him. * * *" Cravens v. Faulconer, 28 Mo. 19, 21.

"Of course, the word 'presence' necessarily includes knowledge of the act and acquiescence thereto upon the part of the testator." Bingaman v. Hannah, 270 Mo. 611, 628, 194 S. W. 276, 281.

The prime reason for requiring the signatures to be attached in the presence of the testator is that he may have knowledge that the witnesses have actually signed the instrument he intends as his will. Therefore this protection is ordinarily afforded when, and only when, the witnesses are near enough to and within the view of the testator for him to gain this knowledge by observation. But how can this knowledge be gained by a blind person? Such a one has to rely upon touch and hearing. Together they would be little protection, as it would be easy to substitute papers in the presence of a blind person without his knowledge. There is but one way in which a blind person could gain that security which the statute easily gives a normal person. That would be by writing his own will, signing it himself, and having it witnessed, all without letting it leave his own manual possession. This would mean that most blind persons, particularly if otherwise enfeebled, through lack of ability to write or through failure to exercise the above excessive degree of caution, could not make a valid will. Surely the Legislature did not intend by a provision of this character to debar the blind from making wills. At the same time there was no intention to except the wills of blind persons from the statutory requirement.

The statute must receive a rational, practical construction, which will enable reasonably careful blind people to execute wills. The statutory "presence" certainly requires as much in the case of a blind testator

as of one who can see. Does it require more? If it does, it must require at least that the testator hear the act of writing the signatures, for that act is the only one covered by the statute. It may be considered that at best all that the testator could know by ear would be that some one was writing something upon some paper near him; that the writing of a signature involves little or no sound; that ordinarily careful people would rarely think to witness or sign wills so close to the testator's ear as to remove all doubt as to his having heard it, and few such testators would think to require such; that most wills are made in middle or advanced life, when the hearing is naturally often defective. The Legislature's object was to protect testators in disposing of their property, not to make it impossible or precarious for them to attempt to do so. In our judgment, the rule for a blind testator is the same as that which would be applied to him if he had sight. The execution of the will now involved complied with the statute.

The claim that the matter of proper execution was for the jury is not well founded. The testimony was sufficient and undisputed. It is true that even undisputed testimony depends upon the credibility of the witnesses and may be disbelieved. But the credibility of the witnesses in such a situation as here is a question primarily for the trial judge. Whatever the rule may be in the Missouri state courts, the rule of the federal courts is that the court will by direction prevent a verdict which it would set aside as unsupported by substantial evidence. McGuire v. Blount, 199 U. S. 142, 148, 26 Sup. Ct. 1, 50 L. Ed. 125.

The matter of testamentary capacity is whether the testimony here reveals any substantial doubt as to this testatrix possessing that standard of mentality required by the settled adjudicated rule in Missouri. The entire testimony has been carefully read and considered. In our judgment it establishes beyond substantial question the capacity required by the Missouri decisions. Southworth v. Southworth, 173 Mo. 59, 73 S. W. 129.

A careful study of all of the evidence reveals no substantial testimony of any undue influence.

The judgment is affirmed.

WADE, District Judge (dissenting). The majority opinion announces:

"In our judgment, the rule for a blind testator is the same as that which would be applied to him if he had sight. The execution of the will now involved complied with the statute."

With this statement I cannot agree. The statute requires that the will "shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator." I agree that "the statute would have been satisfied, had she [the testatrix] been able to see"; but, as stated in the majority opinion, "the prime reason for requiring the signatures to be attached in the presence of the testator is that he may have knowledge that the witnesses have actually signed the instrument he intends as his will." I cannot agree

that this protection against possible imposition is secured by having the will attested under conditions which would bring the witnesses within the "presence" of the testator if able to see. Not that a more strict requirement would absolutely preclude every possible chance for substitution of some other document, but that it would minimize, so far as practicable, such opportunity.

In Calkins v. Calkins, 216 Ill. 458, 75 N. E. 182, 1 L. R. A. (N. S.) 393, 108 Am. St. Rep. 233, the Supreme Court of Illinois, expressing the meaning of the phrase "in the presence of the testator," says:

"An attestation is not in the presence of the testator, although the witnesses are in the same room and close to him, if some material obstacle prevents him from knowing of his own knowledge, or perceiving by his senses, the act of attestation."

"In case of a blind person, his will would be attested in his presence if the act was brought within his personal knowledge through the medium of other senses. But whether a person is blind or can see, an attestation is certainly not in his presence if he has no conscious personal knowledge of the act and is merely told that it has been performed in another room." Drury v. Connell, 177 Ill. 43, 52 N. E. 368.

In Page on Wills, § 214, it is said:

"(a) It has been held by some authorities that the act, if done so that it would be in the presence of one who could see situated in the place of the blind person, is done in the presence of such person.

"(b) A safer test, and one indorsed by the better line of authorities, is that the act must be done in such proximity to the blind person, that he can by means of his remaining senses know what is being done."

In Underhill on Wills, § 196, in speaking of the meaning of the word "presence," it is said:

"In order that a signing shall be in the presence of the testator, in the statutory sense of the word, he must be mentally conscious of what is going on about him. He must have the power to recognize the acts of the witnesses, if not by sight, then by and through the avenue of some other sense."

In Ray v. Hill, 3 Strob. (S. C.) 297, 49 Am. Dec. 647, in speaking of the capacity of a blind man to make a will, the court says:

"If the witnesses to the will of a blind man attest and subscribe the will within the reach of the testator's remaining senses, when he is conscious of what they are doing, and may, if he choose, ascertain that they are subscribing the same will that he had signed, the subscribing will be 'in the presence of the testator.'"

The court further says:

"In the case of a blind man, the superintending control, which in other cases is exercised by sight, must be transferred to the other senses; and if they are, or may, at his discretion, be made sensible that the witnesses are subscribing the same will that he had signed, I should think it ought to suffice. * * * According to the evidence, the subscription by the witnesses was within two feet of the testator. Robinson says, 'I think the testator knew what we were doing when we signed—he might have heard the scratching of the pen."

It is solely a question as to whether or not the blind person knows what is being done. Not being able to see what is being done, the act must be done in such proximity to the testator that he "can by

means of his remaining senses" have a knowledge of what is being done. His source of knowledge need not necessarily be his hearing. A person deprived of sight has a certain capacity for "sensing" what is going on about him, not possessed by those who see. In truth, his sense of hearing, so far as movement of the pen upon the paper is concerned, would be of little value in the way of protection. Even if the testator heard the scratching of the pen, it might not, in my judgment, serve the purpose of the statute, because such sound would be the same, whether the witnesses were signing the document read to the testator, or a substituted document. But, if the parties are in close proximity to the testator, it would at least materially minimize the opportunity to substitute some other paper, which is the main purpose of the requirement that it shall be in the presence of the testator. Such substitution could not well be made without some movement which might be clearly discernible—such as the withdrawing of another document from the pocket, or from some other place; the incident of delay might be suggestive; the movement of the parties about the table might have some suspicious significance; and if the capacity of the testator to "sense" these things failed to furnish the protection which the statute contemplates, I would go to the extent of holding that a document must be signed upon a table or stand, sufficiently close to the testator, so that he might hold his hand upon the paper during the attestation.

If the statute were construed to require that the testator, after the reading of the document, should place his hand upon some portion of it as it rested upon a table in front of him while his signature was being written, and while the witnesses attached their signatures, it would in no manner furnish an obstacle to the execution of a will by a person deprived of sight. It would be as easy to execute it in such manner as in the manner shown by the testimony in this case. The only burden it would put upon the parties would be to have the table moved to the testator, or have the testator sit at the table with the witnesses.

I am afraid that the rule of the majority opinion will leave the blind, desiring to execute a will, to the mercy of designing persons, and inasmuch as this establishes a rule of law, not only applicable to this case, but to all other cases, I cannot concur in the majority opinion upon this point. I feel that at least it was a question for the jury, under proper instructions as to the purpose of the statute, to determine whether the acts done were such as to enable testatrix to be conscious of such acts in such detail as to furnish her the protection which the law provides.

I concur with the majority in holding that the "direction" that Ford attach the name of the testatrix to her will was proven, but for the foregoing reasons I do not believe that he attached such signature in the "presence" of testatrix.

Assuming (without reference to the facts in this case) that there was a conspiracy to substitute a will, there would not be the slightest difficulty in slipping a spurious document from the pocket of any of the parties as they walked from the testatrix to the adjoining room.

The act of such substitution, or any noise incident thereto, would be covered by the movement of the parties across the floor. I think it is fair to assume that the purpose of the statute requiring attestation in the presence of the testator is not only intended to enable the testator to know what is being done, but that it contemplates that such requirement may be a restraint upon those who might be inclined to perpetrate such a fraud. The psychology of the matter must not be overlooked.

I concur in the conclusion of the majority that the plaintiff failed to establish by the testimony that testatrix lacked testamentary capacity.