### In re James H. Moon's Will.

Special Term at Rutland, November, 1934.

Present: Powers, C. J., Slack, Moulton, Thompson, and Sherburne, JJ.

Opinion filed January 2, 1935.

*Novak & Bloomer* for the proponents.

*James B. Donoway, Wayne C. Bosworth,* and *Fenton, Wing & Morse* for the contestant.

Moulton, J. Being of advanced years, James H. Moon decided to make his will. So he prepared a memorandum showing the desired disposition of his estate, but, being only an indifferent penman, he took it to his friend and neighbor William C. Kimball and asked him to write it out. The latter did so in his presence, and Moon, having read it, was satisfied. A day or two later, along with Kimball and another neighbor, Arthur Millard, he went to the office of William Kent, the town clerk, to attend to the execution of the proposed testament. Here he stated to the three that the document was his will and each of them signed his name as a witness, in the presence of Moon and in the presence of each other, but Moon did not sign it. The paper was then placed in the custody of Kimball. Among the intended beneficiaries was the proponent, the Community Baptist Church of Panton, of which Moon was a deacon and the sexton. Moon died within the year following, and thereafter the writing was presented to the probate court for allowance as his last will and testament. The probate court refused to allow it, and an appeal was taken to the county court wherein the trial resulted in a directed verdict for the contestant, a relative of the deceased. The cause is before us upon the proponent's exceptions.

The instrument, as written by Kimball, commences thus: "The last Will and Testament of James H. Moon, July 21, 1932. I James H. Moon of Panton, in the County of Addison and State of Vermont Do make this my last Will and Testament;" and the attestation clause is as follows: "Signed sealed published and Declared by said testator James H. Moon. We sign our names as witnesses at his request and in his presents and in the presents of each other." (Followed by the signatures of Kent, Kimball, and Millard.) There was some uncertainty whether these clauses were a part of the memorandum prepared by Moon, or whether they were added by Kimball. The latter testified that he could not recall that they were in the memorandum, but that he wrote out the opening paragraph to put it in formal language, in addition to copying the memorandum, and that it was possible that he contributed something to the paper to put in the proper formalities. He said, however, that the name in the attestation clause was in the original draft. The memorandum remained in Moon's possession, and has apparently been lost, so we are left without further light upon this point, but, taking the evidence most favorably for the proponent, it cannot be said that the jury would not have been justified in finding that at least the words "signed sealed published and Declared by said testator James H. Moon" were copied by Kimball from the paper handed to him.

Assuming this to be the fact, we are faced with the question whether there was evidence fairly and reasonably tending to show that the circumstances under which the name "James H. Moon" was written or copied by Kimball were such as to make it, in legal intent, the signature of Moon. Our statute P. L. 2751, provides that a will if not signed by the testator, may be signed "by the testator's name written by some other person, in his presence and by his express direction." Kimball testified that there was a signature on the memorandum and that he copied it, and that he wrote the words "James H. Moon" in the attestation clause "by his (Moon's) request, at his orders." Standing alone, the statement that he wrote it at Moon's order would be susceptible of the construction that he did so at the latter's express direction, but this contention is not borne out by an examination of his testimony as a whole. When asked upon direct examination to repeat what was said upon the occasion, he replied: "He (Moon) came in there with this draft

and asked me to draw up his will. I says to him, I says, 'That will you got' I says, 'will stand all right.' And he said 'I am not a very good writer,' and he says 'I would like to have you draw it up for me.' And I did. After I had drawn it up I took it to him and asked him to read it, which he did and pronounced it all right." And on redirect examination, the following occurred. "Q. And what were the circumstances under which you placed that (the name James H. Moon) there? A. Well, I would have to place it there, I suppose, in writing that out and in doing as I wrote it out it calls for his name right there in that particular spot * * *. Q. State just what was said to you in that connection? If you understand what the question means. A. I don't know as anything said at that particular time. Q. Well, what was said in connection with this whole document? A. He asked me to write it up and he sat there while I wrote it. I can't recall as he said anything in connection to it while I was doing it. I can't remember that. A. Now, did you do what he told you to do? A. Yes; sir." On cross-examination he said that he did not write the name as a signature to the document by Moon's direction to write it as a signature. This testimony, being plainly in explanation and correction of his previous statement that it was written by Moon's order, is to be accepted. *Bealty* v. *Dunn,* 103 Vt. 439, 442, 157 Atl. 823; *Bardwell* v. *Commercial Union Assurance Co.,* 105 Vt. 106, 115, 116, 163 Atl. 633.

■ A direction is, according to Webster's International Dictionary, a command or order. It need not be communicated by words, but may be indicated by acts. *Ex parte Leonard,* 39 S. C. 518, 18 S. E. 216, 218, 22 L. R. A. 302. "The obvious construction of 'by his direction' is that the testator shall by word or action clearly indicate to the proxy a desire to have his name signed to the instrument." *Welch* v. *Kirby,* 255 Fed. 451, 453, 166 C. C. A. 527. The word "express" indicates that the direction must be "directly and distinctly stated, not merely implied or left to inference * * * hence, definite; clear; explicit; unmistakable; not dubious or ambiguous." See Webster, *supra.* In Bouvier's Law Dictionary (Rawles' 3rd. Revision) the meaning is given as "stated or declared, as opposed to implied." In construing a statute like P. L. 2751, in this respect, it was said in *McCoy* v. *Conrad,* 64 Neb. 150, 161, 89 N. W. 665, 669: "The word 'express' is used in the statute, not only in contrast

with the word 'implied,' but, to some extent, by way of emphasis.'' And in *Murry* v. *Hennessey,* 48 Neb. 608, 611, 612, 67 N. W. 471: ''Mere knowledge of the testator that his name is being signed by another, or that the signing was acquiesced in or assented to by the testator, will not be sufficient. The statute exacts more than this. It requires that the signing of a will by another must be done in pursuance of the previously expressed direction of the testator. The statute is meaningless, if this is not its scope and purpose.'' To the same effect are *Greenough* v. *Greenough,* 11 Pa. St. 489, 51 A. D. 567, 571, 572, and *Waite* v. *Frisbie,* 45 Minn. 361, 47 N. W. 1069, 1071.

Where the will is holographic the testator's name, even if occurring at the commencement of the instrument, must be intended as his signature. *Adams* v. *Field,* 27 Vt. 256, 266. ''The signing must be such as, upon the face, and from the frame of the instrument, appears to have been intended to give it authenticity. It must appear that the name, so written, was regarded as a signature; that the instrument was regarded as complete without further signature.'' *Waller* v. *Waller,* 1 Grat. (Va.) 454, 481, 42 A. D. 564. The signing must be with intent to execute the will. *In re Booth,* 127 N. Y. 109, 27 N. E. 826, 827, 12 L. R. A. 452, 24 A. S. R. 429. *In re Phelan's Estate,* 82 N. J. Eq., 316, 87 Atl. 625, the will, written by the testator commenced: ''I, Cornelius or Corniel F. Phelan * * * do make, publish and declare this my last will and testament,'' and contained in the attestation clause the following: ''Signed, sealed, published and declared by the said Cornelius or Corniel F. Phelan to be his last will and testament in the presence of as witnesses.'' It was not otherwise signed. On its face and in the absence of evidence as to the intent of the testator it was held (page 626 of 67 Atl.) this did not purport to be a signature or sign manual for the purpose of vitalizing the instrument, and attention was called to the fact that the name was expressed in the third person, and was prefixed with the word ''said,'' a word used to identify the person named as the one in the caption of the will, in both instances the name being merely *designatio personae.* The will was, however, admitted to probate, there having been extrinsic proof that the testator intended his name last written to be his signature.

The same principle applies where the testator's name is written by another person. There must be, we hold, an express

direction to write it as a signature with the intent, on the part of the testator, to give authenticity to the will.

In the instant case the evidence showed nothing more than a request to copy the draft or memorandum, and, perhaps, to add to it such formal clauses as are usually found in wills. There was no evidence from which the jury would be warranted in finding an express direction to write the name *animo testandi*. There was no evidence, either in the frame of the instrument, or otherwise, that it was regarded by Moon as complete, without further signing. As in the Phelan Case, *supra,* the phrase, "said testator James H. Moon," is, on its face, merely an identification and *designatio personae.*

The declaration of Moon to the witnesses that the document was his will does not change the situation. Whatever might have been the result if the name were in his own handwriting, the statutory requirement that, if signed by another person, it must have been by his express direction, cannot be supplied by a subsequent ratification or adoption, even if we assume that the statement should be construed as such. The express direction must, as we have seen, have been given prior to the act of signing. *Murry* v. *Hennessey, supra.* Unless this is so, there is no signature and nothing to ratify or adopt. Neither is the statement evidence of an express direction previously given. "There is no case," says the court in *Burwell* v. *Corbin,* 1 Rand. (Va.) 131, 10 A. D. 494, 501, "where the signature was by another, not in the handwriting of the testator, and where even a full acknowledgment that it was by another (naming him) by the direction and in the presence of the testator, has been held equivalent to proof of all these facts."

What we have said regarding the name as it occurs in the attestation clause applies to the name written in the commencement of the will, if we assume that there was evidence fairly and reasonably tending to show that this part of the document was in the draft prepared by Moon and was copied by Kimball. Still there was no evidence of an express direction, and so we need not inquire whether the name written at the beginning of a will by another person under such circumstances can be regarded as a signature. In *Adams* v. *Field, supra,* it was held that, where the whole will was in the handwriting of the testator, and was attested by three witnesses in his presence, and was published by him as his last will in their presence, so that it

appeared that he adopted the writing of his name at the beginning of the will as a signing and so intended it, there was a sufficient signing. This principle was extended in *Armstrong's Exr.* v. *Armstrong's Heirs*, 29 Ala. 538, 541; *In re Sarah Miles' Will*, 4 Dana (Ky.) 1, 3, 4; *Dudleys* v. *Dudleys*, 3 Leigh (Va.) 436, 443; and *Armstrong.* v. *Walton*, 105 Miss. 337, 355, 62 So. 173, 46 L. R. A. (N. S.) 552, Ann. Cas. 1916E, 137, to apply where the name was so written by another person at the testator's direction. Whether the doctrine of these decisions should be followed by this Court is obviously unnecessary to decide, since the circumstances of the instant case do not require it.

 The law makes no presumption in favor of the due execution of a will, but requires strict proof thereof. *Williams, Exr.* v. *Robinson*, 42 Vt. 658, 665, 1 A. R. 359. The burden of proof is upon the proponent. *Roberts, Admr.* v. *Welch*, 46 Vt. 164, 168. A will, to be valid, must be executed in conformity to the statutory requirements. *Giddings* v. *Turgeon*, 58 Vt. 106, 112, 4 Atl. 711; *Brengle* v. *Tucker*, 114 Md. 597, 80 Atl. 224, 226; *Ferrara* v. *Russo*, 40 R. I. 533, 102 Atl. 86, 87 L. R. A. 1918B, 905; *Wardwell* v. *Wardwell*, 9 Allen (Mass.) 518, 520. Here there has been a failure to comply with the statute, and therefore no error in the ruling of the trial court.

*Judgment affirmed. To be certified.*