*Sadie M. Castruccio v. The Estate of Peter A. Castruccio et al.*, No. 79, September Term, 2016.  Opinion by Getty, J.

**ESTATES & TRUSTS — VALIDITY OF A WILL — STATUTORY REQUIREMENTS — ATTESTATION**

Attestation does not require that the witnesses sign the will on the same page as the testator or on physically connected pages.  Therefore, an otherwise valid will is not invalid merely because the witnesses signed the will on a different page than the testator, and the pages were not physically connected at the time of signing.

Furthermore, neither a complete attestation clause nor having the testator initial each page of the will are requirements for valid execution of a will.  Therefore, the absence of these elements in a testamentary document does not serve to invalidate the will, nor prevent the presumption of due execution from attaching to it.

Circuit Court for Anne Arundel County
Case No. 02-C-13-181345
Argued: May 5, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 79

September Term, 2016

SADIE M. CASTRUCCIO

v.

THE ESTATE OF PETER A. CASTRUCCIO
et al.

Barbera, C.J.
Adkins,
McDonald,
Watts,
Hotten,
Getty,
Rodowsky, Lawrence F.
    (Senior Judge, Specially Assigned),

JJ.

Opinion by Getty, J.

Filed: August 25, 2017

> If from the whole evidence, the jury shall find that Tilghman Waters executed the will in controversy, in the presence of three subscribing witnesses thereto, and that they, at his request, in his presence, and in the presence of each other, signed their names as witnesses thereto; that at the time of the execution thereof, he, the said Tilghman, was capable of understanding the business in which he was engaged—the property he desired to dispose of, and the object of his bounty named in said will, and that the same was his free and voluntary act, they will find for the defendants.

*Waters v. Waters*, 35 Md. 531, 536 (1872).

Remarkably similar to the formulation quoted by this Court in *Waters* in 1872, the current testamentary statute provides that "every will shall be (1) in writing, (2) signed by the testator, or by some other person for him, in his presence and by his express direction, and (3) attested and signed by two or more credible witnesses in the presence of the testator." Md. Code (1974, 2011 Repl. Vol.), Estates & Trusts ("ET") § 4-102.

In fact, the statutory requirements for the valid execution of a will have remained virtually unchanged in Maryland for over two hundred years. In 1798, the General Assembly enacted the first testamentary statute in Maryland, which included strikingly similar language for devises:

> All devises and bequests of any lands or tenements, devisable by law, shall be in writing, and signed by the party so devising the same, or by some other person in his presence, and by his express directions, and shall be attested and subscribed in the presence of the said devisor, by three or four credible witnesses, or else they shall be utterly void and of none effect[.]

1798 Md. Laws, ch. 101, sub-ch. 1, § 4. This Court has previously traced the foundational roots of these longstanding testamentary formalities to the English Statute of Frauds. *See Casson v. Swogell*, 304 Md. 641, 648–50 (1985).

Relatively few changes have been made to the language of the 1798 statute. In 1884, the statute was amended such that only "two or more credible witnesses" were required for attestation. 1884 Md. Laws, ch. 293. In 1943, the statute was amended to add a paragraph (b), which provided exceptions to the statutory formalities for persons serving in the armed forces located outside of the United States.[1] 1943 Md. Laws, ch. 799. The current language of the statute first appeared in 1969 as Article 93, § 4-102 of the Maryland Code. *See* 1969 Md. Laws, ch. 3, § 1. In 1974, the former Article 93 was recodified as the Estates and Trusts Article during Code Revision. *See* 1974 Md. Laws, ch. 11, § 2. The statute has not been substantively amended since its enactment in its current form in 1969. *But see* 2010 Md. Laws, ch. 72, § 5 (nonsubstantive amendment).

In this appeal, we must determine whether a will admitted to probate satisfied the statutory requirements for valid execution, particularly the requirement of attestation. For the following reasons, we hold that the will at issue satisfied the statutory requirements for valid execution, and therefore the circuit court properly granted summary judgment in favor of the testator's estate. Accordingly, we affirm the judgment of the Court of Special Appeals.

## BACKGROUND

Dr. Peter Castruccio died on February 19, 2013, at the age of eighty-nine. He was survived by his wife of sixty-two years, Sadie Castruccio, who was ninety-two years old at the time of his death.

---

[1] The language of the former paragraph (b) is now codified as ET § 4-103.

## A. Drafting and Execution of the 2010 Will

Peter signed a last will and testament on September 28, 2008, which he filed with the Register of Wills for Anne Arundel County for safekeeping. In September 2010, Peter asked his attorney, John Greiber, to retrieve the 2008 Will so that he could revise it. When Peter received the 2008 Will, he marked up the document in the presence of Mr. Greiber, and asked his longtime employee, Darlene Barclay, to transcribe his changes. Darlene made the requested changes and returned the draft 2010 Will to Peter, who reviewed it with Mr. Greiber on September 28, 2010.

On September 29, 2010, Peter signed the 2010 Will in the presence of three witnesses: Mr. Greiber, his daughter Samantha Greiber, and Darlene's daughter Kim Barclay, who had also been employed by Peter for approximately six years. Peter called the three witnesses into his office and requested that they sign the papers on his desk, which he identified as his will. Peter then signed the Will in the presence of Mr. Greiber, Samantha, and Kim. Next, each of the three witnesses signed the Will in the presence of Peter and each other. Six weeks later, on November 17, 2010, Mr. Greiber deposited the Will with the Register of Wills for Anne Arundel County, where it remained until one week after Peter's death.

## B. Format and Substance of the 2010 Will

The 2010 Will, which is reproduced in the appendix to this opinion, consists of six pages, which are consecutively numbered as pages 1 of 6, 2 of 6, etc. The page numbers are centered on the bottom of each page. The words "Peter Adalbert Castruccio" are

3

centered in large font on the top of page 1 of 6; otherwise, the font and type-size are consistent throughout the document.

In the first paragraph on page 1 of 6 of the Will, Peter "declare[s] this instrument as his WILL IN TESTAMENT [sic]." The second paragraph on page 1 of 6 states that, upon his death, Peter "hereby declare[s] the following:[.]" Following these introductory paragraphs, the 2010 Will contains eleven consecutively numbered paragraphs labeled Item 1, Item 2, etc. Some paragraphs are further subdivided into consecutively numbered subparagraphs.

Item 1 names Mr. Greiber as Peter's personal representative for the administration of his estate. Item 7 leaves cash bequests of varying amounts to three specified individuals, including Darlene. Item 8 leaves "the rest and remainder" of Peter's estate to Sadie, "should she one, survive [Peter] and two provided she has made and executed a Will prior to [Peter's] death." Item 10, entitled "Residuary Clause," appearing on page 5 of 6, provides as follows:

> Should, at the time of my death, my beloved wife not have a valid Will filed with the Register of Wills in Anne Arundel County dated prior thereto these, I hereby give, devise and bequeath all the rest and residue of my Estate and property, whether imposition, expectancy will remainder, including all property over which I may have Power of Appointment to the following individuals share and share alike per stirpes and not per capita to DARLENE BARCLAY, [address redacted], Glen Burnie, Maryland, 21061.[2]

---

[2] According to Mr. Greiber, Peter was concerned that Sadie would leave her estate to certain family members of whom he did not approve. He sought assurances that Sadie would not leave her assets, or at least the assets that she would receive from him, to those family members. Thus, he conditioned Sadie's bequests under the 2010 Will upon her

4

Also on page 5 of 6 of the Will, below the "Residuary Clause" and Item 11, appears a concluding paragraph:

> **IN TESTIMONY WHEREOF**, I, the above mentioned testator have hereunto set my hands and seals to this six page instrument, and have initial [sic] each page hereof, which instrument is intendant [sic] to be my Last Will and Testament, this <u>29th</u> day of September, 2010.

(The date "29th" is handwritten above a blank line.) Contrary to this statement, none of the pages of the 2010 Will are initialed. Below this concluding paragraph, Peter signed his full name above the typewritten words "PETER ADALBERT CASTRUCCIO[.]" Below his signature are the words "SIGNED, SEALED, PUBLISHED AND DECLARE [sic], BY PETER ADALBERT CASTRUCCIO." Another line down, the last two lines of page 5 of 6 read as follows: "The above named individual, does declare for his Last Will and Testament this instrument, have hereunto subscribed to have witness on the date **last mentioned above**, and at the location, and [. . . .]"

The first two lines of the next page of the Will, page 6 of 6, appear to be a continuation of the sentence that began on the previous page: "I do hereby attest that the testator to be of sound mind, fully able to understand this instrument, and the testator voluntarily and freely did sign same." Below these words are the signatures of Mr. Greiber, Kim, and Samantha, each appearing under the word "WITNESS:" and above a line that reads, "Signature, residing at:[.]" Below each signature appears the witness' address. (Mr. Greiber's address is typed consistent with the text of the document; Kim's and Samantha's

---

having made and filed a will that disclosed whether she intended to make testamentary gifts to those family members.

addresses are handwritten in what appears to be the same handwriting as their signatures.)

No other text appears on page 6 of 6, other than the pagination at the bottom of the page.

### C.     *Petition to Caveat the 2010 Will*

On February 26, 2013, one week after Peter's death, Mr. Greiber filed a Petition for Administrative Probate with the Register of Wills for Anne Arundel County, requesting appointment as personal representative of Peter's estate and admission to probate of the 2010 Will. The next day, the Register of Wills issued an Administrative Probate Order, appointing Mr. Greiber as personal representative of Peter's estate and admitting the 2010 Will to administrative probate.

At the time of Peter's death, Sadie had not filed a valid will with the Register of Wills for Anne Arundel County. Thus, under Mr. Greiber's interpretation of Peter's 2010 Will (and specifically the Residuary Clause), the residue of Peter's estate would pass to Darlene, not to Sadie. Seeking to avoid this result, on March 27, 2013, Sadie filed a Petition to Caveat Will in the Orphans' Court for Anne Arundel County. On July 2, 2013, Sadie petitioned the Orphans' Court to transmit issues related to the caveat to the circuit court.

On August 1, 2013, the Orphans' Court entered an order transmitting seven issues to the Circuit Court for Anne Arundel County for trial, designating Sadie as the plaintiff and the Estate of Peter Castruccio ("Estate") as the defendant. The seven issues were designated as follows:

> A.     Was the six (6) page paper writing dated September 29, 2010, captioned "Peter Adalbert Castruccio" (the "Will") executed by Peter Adalbert Castruccio (the "Testator")[?]

B. Did the Testator execute the Will intending it to constitute his last will and testament?

C. Are all of the pages of the Will the genuine pages the Testator believed comprised the Will he intended to execute?

D. Was the execution of the Will procured by undue influence?

E. Was the execution of the Will procured by fraud?

F. Was the Will actually attested and signed by credible witnesses in the presence of the Testator?

G. Were the contents of the Will read by or to the Testator or known to him at or before the time of its purported execution?

On September 17, 2013, the circuit court granted a motion to intervene filed by Darlene, and designated her as a defendant.

**D.    *Cross-Motions for Summary Judgment***

On October 10, 2013, the Estate filed a motion for summary judgment on all seven issues. Sadie filed an opposition to the motion on October 30, 2013. The circuit court held hearings on the motion on February 21, 2014 and May 2, 2014. Meanwhile, on April 8, 2014, Sadie filed a cross-motion for summary judgment as to Issue F, arguing that the 2010 Will did not satisfy the statutory requirement of attestation because the witnesses did not sign on the same page as the testator or on "physically connected pages." Sadie submitted the affidavit of her attorney, who declared that he inspected the 2010 Will at the Register of Wills on March 27, 2013, and found that it "consisted of six separate, unattached pages, without any staple holes or other evidence of having ever been physically connected together."

7

Sadie also submitted the deposition testimony of Mr. Greiber and his daughter Samantha, both of whom were witnesses to the 2010 Will. In his deposition, Mr. Greiber recalled that the Will had been stapled when it was signed:

Q. So he took his signature page and the—
A. The whole will, I think everything was stapled together I'm pretty sure.
Q. It was stapled at that time?
A. I think, I'm pretty sure. Again, Peter had a habit of stapling everything. I don't staple everything.
Q. So—and this is not a will but—so if it was stapled, was it stapled like here—
A. Yes.

Samantha also testified in her deposition that the 2010 Will was stapled at the time of signing:

Q. Do you remember when he gave you the will—
A. Uh-huh.
Q. And again, if you don't remember please let me know.
A. Okay.
Q. But whether it was actually stapled as one unit—
A. Yes.
Q. –or whether it was just loose papers?
A. Stapled.

In addition, Samantha testified that she remembered seeing Peter initial each page of the Will:

Q. But you do remember seeing him sign it?
A. Yes.
Q. Do you remember seeing him initial each page?
[Counsel for the Estate]: Object to the question. Go ahead and answer.
A. Yes. Yeah. I remember him signing and then him getting up and giving the will to me.

Based on this testimony and the affidavit of her attorney, Sadie argued that summary judgment as to the remaining issues (other than Issue F) was inappropriate because there

8

were disputed issues of material facts. Specifically, Sadie noted that the 2010 Will admitted to probate did not match the physical description of the will provided by Mr. Greiber and Samantha: The 2010 Will was not stapled nor was each page initialed, even though Mr. Greiber and Samantha stated that it was at the time of signing.

### E. The Lower Courts' Rulings

On September 23, 2014, the circuit court issued a memorandum decision granting the Estate's motion for summary judgment on all issues and denying Sadie's cross-motion for summary judgment as to Issue F. In reaching its decision, the circuit court "proceeded . . . on the assumption . . . that the separate sheets of the Will were not mechanically affixed by a staple or other device and were not so affixed when deposited with the Register of Wills for safekeeping on November 17, 2010." The court then concluded, as to Issue F, "that the focus should be on a more holistic inquiry about whether the document purporting to be the will holds together as the unitary document completed by the testator and signed by the witnesses rather than an inquiry that at a certain point some or all of the pages were mechanically affixed to each other."

As to the remaining issues, the circuit court found that the 2010 Will contained a proper attestation clause, and therefore the presumption of due execution attached. The court also found that Sadie had not presented clear and convincing evidence to overcome the presumption. Finally, regarding Peter's testamentary capacity, the court found "that while Peter was at age 84, elderly, he appears to have been fully in control of what his desires and intentions were and was not one to be lead [sic] by others or even to take advice—including good advice—that he did not appreciate."

On October 2, 2014, the circuit court entered an order consistent with its memorandum decision. In its order, the court found that

A. the six page paper writing dated September 29, 2010, captioned "Peter Adalbert Castruccio" (the "Will") was executed by Peter Adalbert Castruccio (the "Testator");

B. the Testator executed his Will with the intention that it constituted his last will and testament;

C. all of the pages of the Will are the genuine pages the Testator believed comprised the Will he intended to execute;

D. the Will was not procured by undue influence;

E. the Will was not procured by fraud;

F. the Will was actually attested and signed by credible witnesses in the presence of the testator; and

G. the contents of the Will were read by the Testator and known to him at and before the time of the execution of the Will on September 29, 2010.

On October 9, 2014, Sadie filed a notice of appeal to the Court of Special Appeals.

The Court of Special Appeals affirmed the judgment of the circuit court in a reported opinion issued on July 28, 2016. Sadie filed a motion for reconsideration, which the intermediate appellate court granted in part and denied in part. The Court of Special Appeals issued a revised opinion on September 29, 2016. *Castruccio v. Estate of Castruccio*, 230 Md. App. 118 (2016). Sadie then petitioned this Court for a writ of certiorari, which this Court granted on January 9, 2017. *Castruccio v. Estate of Castruccio*, 451 Md. 248 (2017). Sadie presents three questions for our review:

I. Can a Will satisfy the requirements of valid execution in Maryland if (a) the testator and the witnesses do not sign on the same page, or on physically connected pages, (b) the Will contains no proper attestation

10

clause, and (c) the Will was not otherwise regular on its face because it expressly states the pages were initialed, but they were not?

II.     Can a presumption of due execution attach to a Will (a) executed by the testator and the witnesses on separate, loose pages, (b) containing no valid attestation clause, (c) expressly stating the pages were initialed, when they were not, and (d) lacking any other evidence that the witnesses signed in the presence of the testator, based on a common font, consecutive page numbering, and continuation of language?

III.    Can summary judgment as to a Will's validity be granted where the physical description of the Will by two of the witnesses directly contradict[s] the actual physical condition of the Will submitted for probate?

## STANDARD OF REVIEW

The question of whether a trial court's grant of summary judgment was proper is a question of law subject to *de novo* review on appeal. In reviewing a grant of summary judgment under Md. Rule 2-501, we independently review the record to determine whether the parties properly generated a dispute of material fact, and, if not, whether the moving party is entitled to judgment as a matter of law. We review the record in the light most favorable to the nonmoving party and construe any reasonable inferences that may be drawn from the facts against the moving party.

*Boland v. Boland*, 423 Md. 296, 366 (2011) (quoting *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 479 (2007)).

## DISCUSSION

In Maryland, in order to be validly executed, a will must be "(1) in writing, (2) signed by the testator, or by some other person for him, in his presence and by his express direction, and (3) attested and signed by two or more credible witnesses in the presence of the testator." ET § 4-102. The proponent of the will bears "[t]he burden of proving the existence of these elements, by a preponderance of the evidence[.]" *Groat v. Sundberg*, 213 Md. App. 144, 152 (2013).

One way to establish the validity of a will is through an attestation clause in the will itself. "An attestation clause is a 'provision at the end of an instrument (esp. a will) that is signed by the instrument's witnesses and that recites the formalities required by the jurisdiction in which the instrument might take effect (such as where the will might be probated).'" *Slack v. Truitt*, 368 Md. 2, 8 n.5 (2002) (quoting Black's Law Dictionary 124 (7th ed. 1999)). "[A]n attestation clause reciting facts necessary for the valid execution of a will is prima facie evidence of the due execution of the will, if it bears the genuine signatures of the testator and subscribing witnesses." *Van Meter v. Van Meter*, 183 Md. 614, 617–18 (1944). Furthermore, "a presumption of due execution attaches to a will that contains the testator's signature and an attestation clause signed by the witnesses." *Slack*, 368 Md. at 7–8 (footnote omitted). "[O]nce the presumption attaches, the burden of proof is on the caveator to show by clear and convincing evidence that the facts stated in the attestation clause are untrue." *Id.* at 8 (footnote omitted).

On the other hand, an attestation clause is not a requirement for a valid will. *See id.* at 8 n.5 ("A formal attestation clause is not an essential part of a will."); *Van Meter*, 183 Md. at 617 ("The validity of the execution of a will depends, not upon an attestation clause, but upon conformity of the execution with the requirements of the statute, and also the testimony of the subscribing witnesses if they are produced and examined."). Nor is an attestation clause required in order to establish the presumption of due execution. *See Slack*, 368 Md. at 12 ("[A]n attestation clause is not the *sine qua non* of the presumption of due execution."). "[I]n the absence of an attestation clause, if a proponent of a testamentary document can adduce sufficient evidence from the document and/or

surrounding circumstances to make a *prima facie* case for the satisfaction of the statutory requirements for execution of a will, the presumption of due execution attaches." *Groat*, 213 Md. App. at 156–57. Thus, a proper attestation clause in a will is itself sufficient to establish a prima facie case for the validity of the will, but is not necessary to do so.

"The attestation of the will is the act of the witnesses in seeing that those things exist and are done which the attestation clause declares were done and which the statute requires." *McIntyre v. Saltysiak*, 205 Md. 415, 421 (1954). In other words, the witnesses' attestation confirms that the will was executed in accordance with the requirements of ET § 4-102. Attestation requires that "the testator directly or indirectly request[] those persons who do attest [the will] to subscribe their names to it as witnesses." *Casson*, 304 Md. at 654–55 (quoting *Gross v. Burneston*, 91 Md. 383, 387 (1900)). "[T]he testator need not formally ask the witness to sign the paper, his implied assent being sufficient." *Id.* at 654. Furthermore, "where the testator signs a will in front of the witnesses, proper attestation does not require that the testator inform the witnesses that they are signing a will." *Slack*, 368 Md. at 13 (citing *Casson*, 304 Md. at 656). Nor does attestation require that the witnesses "see the testator sign the will." *Van Meter*, 183 Md. at 617. But, if the witnesses do not observe the testator signing the will, then "the testator must *acknowledge* his signature before the witnesses or declare the document to be his will." *Slack*, 368 Md. at 13 (citing *Casson*, 304 Md. at 655).

In contrast, the witnesses must always sign the will in the presence of the testator. *See Groat*, 213 Md. App. at 161–62; ET § 4-102(3). "In the presence of the testator" means "within the unobstructed range of vision of the testator, although if he is able to see it,

13

without any material change of position, the fact that he does or does not avail himself of the privilege is immaterial." *Groat*, 213 Md. App. at 161–62 (quoting *Brittingham v. Brittingham*, 147 Md. 153, 160 (1925)). In other words, "[i]t is not necessary for the testator to have watched the witnesses sign, as long as the testator *could* have watched them sign." *Id.* at 162 (alteration in original) (quoting Restatement (Third) of Property, Wills and Other Donative Transfers § 3.1 cmt. p (1999)).

In this appeal, Sadie does not dispute that the 2010 Will satisfies the requirements of ET § 4-102(1) and (2)—it is a writing, signed by Peter, the testator. Sadie also does not dispute that the Will was "signed by two or more credible witnesses in the presence of the testator"—it was in fact signed by three credible witnesses in the presence of Peter and each other. Furthermore, there is no dispute over the requirement that the witnesses either see the testator sign the will or that he acknowledge his signature or declare the document to be his will. In fact, Peter signed the 2010 Will in the presence of the three witnesses, *and* he identified the document as his will.

Instead, Sadie contends that the 2010 Will does not satisfy the requirement of ET § 4-102(3) that the will be "**attested** . . . by two or more credible witnesses." Quoting *Shane v. Wooley*, 138 Md. 75, 78 (1921), Sadie argues that attestation requires "that the witnesses must sign, either upon the same sheet as the signature of the testator, or on some sheet physically connected with it." Because Peter signed on page 5 of 6 of the 2010 Will, and the three witnesses signed on page 6 of 6, and those pages were not physically connected at the time of signing (or, at a minimum, there is a factual dispute as to whether the pages were physically connected when signed), Sadie argues that the circuit court erred in

14

granting summary judgment in favor of the Estate on the issue of attestation. In addition, Sadie contends that the 2010 Will is otherwise invalid because it does not contain a "proper attestation clause," and because the Will "expressly states [that] the pages were initialed, but they were not." In the alternative, Sadie argues that even if these deficiencies do not necessarily invalidate the 2010 Will, the circuit court nonetheless erred in finding that the presumption of due execution attached to the Will, thereby requiring Sadie to rebut the presumption by clear and convincing evidence.

## A. *Attestation on a Different Page than the Testator's Signature*

The primary issue in this case is whether attestation requires that the testator and the witnesses sign on the same page of the will, or else on physically connected pages. Sadie cites *Shane v. Wooley* for the proposition that attestation requires "that the witnesses must sign, either upon the same sheet as the signature of the testator, or on some sheet physically connected with it." *Shane*, 138 Md. at 78. The Estate and Darlene respond that the "physically connected" rule of *Shane* applies only when the attestation is "on a document separate from the will itself"; this rule does not apply, they contend, to separate pages of a multi-page will.

*Shane* involved a one-page will that had been signed by the testatrix, placed in an envelope, and sealed. 138 Md. at 76. The following language "appeared across the sealed portion of the envelope," followed by the signatures of three witnesses: "We have seen the said Mrs. Catherine Shane sign and seal this paper in our presence and at her request we hereby sign our names as witnesses." *Id.* The plaintiffs argued that the will was invalid

15

because the witnesses signing on the envelope rather than the will itself did not satisfy the statutory requirement of attestation. *Id.* at 77.

In *Shane*, this Court examined a variety of cases (both in state and out of state) and treatises, and arrived at the following observation:

> While there is no provision of the statute of this State which requires in terms that the attestation clause and the signatures of the witnesses shall be at the end of the will or at any particular place of the will, as in some of the States of the Union, the weight of authority, however, appears to be that the witnesses must sign, either upon the same sheet as the signature of the testator, or on some sheet physically connected with it, to constitute a valid will.

*Id.* at 78. After summarizing those authorities, the Court concluded that "it is obvious, under the authorities cited, the formalities prescribed by law, in the execution of wills, have not been complied with, to constitute a valid will." *Id.* at 80.

As the Estate and Darlene note, however, the facts of *Shane* and the cases cited therein are materially distinguishable from the facts of this case. For example, the *Shane* Court quoted *Brengle v. Tucker* for the proposition that "[t]o subscribe means that the witnesses shall sign their name to the same paper for the purpose of identification, and implies that attestation has been performed." *Id.* at 78 (quoting *Brengle v. Tucker*, 114 Md. 597, 602 (1911)). In *Brengle*, the testator wrote and signed a will from a hospital bed immediately before going into surgery. *Brengle*, 114 Md. at 599–600. After writing the purported will on a piece of paper he had received from his doctor, the testator handed the paper back to the doctor and asked him to sign it. *Id.* at 600. The doctor complied. *Id.* Although there were three other people in the hospital room who had also witnessed these events, none of them signed the purported will. *Id.* at 601. The Court held that the

16

purported will did not satisfy the statutory requirements because there was "only one subscribing witness to [the] paper writing." *Id.* at 602.

Thus, the issue in *Brengle* was not *where* the witnesses must sign in order to satisfy the statutory requirement of attestation, but *whether* the "witnesses" must sign the will *at all* in order to satisfy the requirement, when it is undisputed that they actually witnessed the testator write and sign the will. In this case, there is no dispute that three witnesses actually signed the 2010 Will in the presence of Peter and each other.

The *Shane* Court also cited *In re Baldwin's Will* for the proposition that "[t]he authorities hold that the attestation or subscription by witnesses must be on the same sheet of paper as that which contains the testator's signature, or else upon some paper physically connected with that sheet." *Shane*, 138 Md. at 78 (quoting *In re Baldwin's Will*, 59 S.E. 163, 165 (N.C. 1907)). In *Baldwin*, Mr. Covington wrote a will that was dictated to him by the testator, Mr. Baldwin. *Baldwin*, 59 S.E. at 164. Mr. Baldwin signed the will in Mr. Covington's presence, and Mr. Covington signed the will as a witness in the presence of Mr. Baldwin. *Id.* Later, Mr. Covington took the paper writing with his and Mr. Baldwin's signatures to his home and "transcribed it on better paper." *Id.* There, outside the presence of Mr. Baldwin, Mr. Covington signed this new copy of the will as a witness. *Id.* At some point after Mr. Covington returned the new copy to Mr. Baldwin, Mr. Baldwin signed it outside the presence of Mr. Covington. *Id.* Thereafter, another witness named Mr. Bowles signed the new copy of the will at the request and in the presence of Mr. Baldwin. *Id.* at 164–65. After Mr. Baldwin's death, his wife burned the original copy of the will, and only the second copy (on better paper) was admitted to probate. *Id.* at 165.

17

The Supreme Court of North Carolina held that the second copy of the will did not satisfy the statutory "requirement that the will shall be subscribed in the presence of the testator by two witnesses at least." *Id.* This was because Mr. Covington signed the second copy of the will before Mr. Baldwin had signed it and outside his presence. *Id.* It was immaterial that Mr. Covington had signed the original copy in Mr. Baldwin's presence, because this copy "was not attached in any way to the paper offered for probate and had no physical connection with it." *Id.* Therefore, the Court held that, "[i]n the absence of any sort of physical connection between the two papers, resort cannot be had to parol proof to show a similarity of contents, and that they constituted one and the same will." *Id.*

Thus, the issue in *Baldwin* was whether a witness' proper attestation of one copy of a will could essentially transfer to a second copy of the will, when the witness' signature on the second copy occurred outside the presence of the testator and consequently was invalid. In this case, all three witnesses signed the 2010 Will after Peter had signed it, in the presence of Peter and each other. All four signatories signed the same document (albeit on separate pages) as part of the same transaction.

The *Shane* Court also relied on James Schouler, *Law of Wills, Executors, and Administrators* § 336 (5th ed. 1915). *Shane*, 138 Md. at 79. That section is entitled "Attestation on a Different Paper" and provides,

> But the attestation or subscription by witnesses must be on the same sheet of paper as that which contains the testator's own signature, or else upon some paper physically connected with that sheet. No particular mode of connection is prescribed by law; and hence the fastening by tape, by eyelets, by mucilage, or even by a pin, seems unobjectionable. Where papers are thus connected, the testator may sign on one paper and the witnesses on another, provided their intent corresponded.

18

But attestation or a subscription by witnesses on a piece of paper, **detached and separated from the will** and the testator's signature, nor affixed in his presence to the paper at the time of execution, fails of compliance with the policy of our law; we may assume it to be void, as otherwise a door would be open to much fraud and perjury.

Schouler, *supra* at § 336 (emphasis added) (footnote omitted). Notably, the *Shane* Court did not cite to the next section of Schouler, § 337, which is entitled "Attestation where a Will is written on Several Sheets." That section provides,

[I]f the will be written on several sheets, whether fastened together or not, and the last sheet alone is attested in form, the whole will is well executed, provided all the sheets were in the room. . . . and unquestionably, if the several pieces of paper are connected in their provisions and form a connected series, and are brought in this shape before the attesting witnesses at the time of their subscription, a single attestation will suffice for the whole.

The fact that the *Shane* Court cited § 336, which discusses attestation "on a piece of paper detached and separated from the will," but did not cite § 337, which describes a will "written on several sheets, whether fastened together or not," supports the Estate's and Darlene's position that the *Shane* Court was only concerned with the validity of the attestation when the witnesses sign a document other than the will itself, not when the witnesses sign the will on a different piece of paper than the testator. Indeed, these were the facts in *Shane*: the testator signed a one-page will, while the witnesses signed on a sealed envelope containing the will. Unlike here, where the three witnesses signed *the will* on a different page than the testator, the witnesses in *Shane* did not sign *the will* at all. Therefore, we conclude that the "physically connected" rule of *Shane* does not apply to loose pages of a multi-page will. Instead, *Shane* stands for the proposition that, when the

19

witnesses sign on a piece of paper that is not part of the will itself, the paper must be physically connected to the will in order to satisfy the statutory requirement of attestation.

As we have just determined, *Shane* did not address the issue presented in this case: when the witnesses sign the will on a different page than the testator, must the pages be physically connected in order to satisfy the statutory requirement of attestation? In fact, the majority of the cases cited by the parties to this Court are generally concerned with the validity of a multi-page will whose pages are not physically connected at the time of execution, rather than the validity of the attestation when it is not on the same page as the testator's signature. *See, e.g.*, *In re Estate of Beale*, 113 N.W.2d 380 (Wis. 1962); *In re Covington's Estate*, 33 A.2d 235 (Pa. 1943); *In re Swaim's Will*, 78 S.E. 72 (N.C. 1913). Those cases generally hold that a multi-page will is not invalid merely because its pages are not physically connected, as long as "they are connected by their internal sense by coherence or adaptation of parts." *Swaim*, 78 S.E. at 73; *see also id.* ("[T]he papers themselves bear intrinsic evidence that, while separate, they were tacked together in the mind of the testator.").

Sadie acknowledges that "[t]he overwhelming majority of the cited material confirms that a properly executed will may be valid even if written on disconnected sheets," and she does not challenge this principle. Thus, Sadie does not dispute the validity of the 2010 Will merely because its pages were not physically connected. Nor does she dispute whether the page containing Peter's signature (page 5 of 6) and the page containing the witnesses' signatures (page 6 of 6) are part of the same document constituting the 2010 Will. Instead, Sadie argues that the 2010 Will was not properly attested, because the

20

witnesses did not sign on the same page as the testator's signature or on a page physically connected to it.

The parties have cited, and this Court has been able to find, only one case in American jurisprudence that addresses this precise issue: *In re Kaiser's Estate*, 34 N.W.2d 366 (Neb. 1948).[3]  The will in *Kaiser* "consisted of two sheets numbered (1) and (2) respectively.  The dispositive portion of the will thus written, and signed by the testator, all appeared on page (1).  The perfected attestation clause thereof, subscribed by the witnesses, alone appeared on page (2)." *Kaiser*, 34 N.W.2d at 370.  The evidence did not affirmatively show "[w]hether or not the two sheets were physically attached to each other at the time of execution." *Id.*  "[A]fter the execution of the will[,] both pages were placed in a sealed envelope and on the same day delivered into the custody of the county judge, who thereafter opened it only after [the] testator's death." *Id.*

---

[3] The appellant in *Goroum v. Rynarzewski*, 89 Md. App. 676 (1991) raised a similar issue, but the Court of Special Appeals did not address the argument on the merits.  In *Goroum*, the attestation clause and the signatures of the witnesses appeared on a page that contained no other provisions of the will.  89 Md. App. at 684.  "[T]he testator [had] initialed and signed each and every page of his will, except the attestation page, in the presence of the witnesses." *Id.* at 683.  The appellant argued that the will was invalid based on one of the witnesses' testimony that it was the normal practice of the law office "that the sheets were not stapled together when wills were signed." *Id.* at 680 n.2.

The court noted that "[n]o one testified that the attestation page of *this will* was at any time unaffixed." *Id.* at 681.  Furthermore, "[a] law office's general practice to do things a certain way is not clear and convincing evidence that it was done that way in a specific instance.  Simply put, there is *no* evidence that at the time the testator and witnesses executed this will, *its* pages were unaffixed." *Id.*  Therefore, the court declined to address whether the will would have satisfied the statutory requirements if the attestation page had not been affixed to the remainder of the will. *Id.* at 684.

The *Kaiser* Court noted that "[t]here is no statutory provision in this state designating just where a will shall be attested and subscribed by the witnesses, or forbidding the use of separate sheets in making a will, or directing how or that they shall be physically attached to each other in order to make a valid will." *Id.* at 373. The Court also observed, "[i]n the case at bar, the sheets were not only connected by their internal sense, but identified by the subscribing witnesses as connected parts of [the] testator's will." *Id.* Therefore, the Court upheld the validity of the will. *Id.* at 374.

Sadie attempts to distinguish *Kaiser* by noting that the will in that case "contained a *valid attestation clause*," and "was placed in a sealed envelope after it was signed, from which it did not emerge until the testator's death." Indeed, these additional facts provide further indications of the validity of the will in *Kaiser*. However, these additional facts have no bearing on whether attestation requires the witnesses to sign on the same page as the testator, or else on physically connected pages. If attestation required the witnesses to sign on the same page as the testator, or else on physically connected pages, then it would not matter that the will bore certain other indicia of its validity, such as having a valid attestation clause and remaining in a sealed envelope. In other words, if the will was not properly attested as required by statute, then it would have been invalid, regardless of any other indicia of validity.

This Court considered a similar issue in *Casson*. In that case, the Court rejected an argument "that the will is invalid because the signatures of both witnesses do not appear at the end of the will, and do not appear in close proximity to one another at any particular place on the document." 304 Md. at 657. The Court noted that ET § 4-102 "does not

require the witnesses to sign together, **or at any particular place on the will**." *Id.* (emphasis added). Therefore, the Court concluded that "[w]hile the fact that the two witnesses did not sign in the same place may bear on the jury question of whether the will is a fraud, it does not constitute a fatal variance from the required procedure for lawful execution." *Id.*

Furthermore, we believe that the holding of *Kaiser* comports with previous decisions of this Court emphasizing the effectuation of the testator's intent over strict compliance with the statutory formalities. For example, in *Slack*, this Court held that the presumption of due execution attaches to a will notwithstanding the absence of an attestation clause, as long as the will bears sufficient other indicia of due execution. 368 Md. at 12. Moreover, the *Slack* Court declined to invalidate the will at issue in that case even though one of the witnesses "testified that she did not know that the paper she was signing was a will, and could not remember whether she saw [the testator]'s signature on the document." *Id.* at 14. The Court noted that the purpose of ET § 4-102 "was to remove uncertainty in the making of wills and to prevent the practice of imposition and fraud upon testators." *Id.* at 17. The Court then observed that the circumstances of that case did "not suggest that there was any fraud worked upon the testator. The will was found in [the] testator's home after his death, duly signed and witnessed; **this shows that the testator thought it was a valid will**." *Id.* (emphasis added). Therefore, the *Slack* Court concluded that "the will was entitled to probate as a validly executed will." *Id.* at 18. Additionally, in *Casson*, this Court held that "[t]o fulfill the requirement that a testator request a witness sign a document it is not necessary that the witness know it is a will." 304 Md. at 654.

23

Thus, this Court's decisions in *Casson* and *Slack* indicate that the Court is generally reluctant to impose formalities beyond those specifically required by statute, and that the testator's intention that the document act as his will is paramount. *Cf. Carney v. Kosko*, 229 Md. 112, 117 (1962) ("[A] will or a codicil need not be in any particular form, so long as it (a) makes a disposition of the testator's property, and (b) such disposition is to take effect only upon death."); *see also* Restatement (Third) of Property (Wills & Don. Trans.) § 3.1, cmt. f ("A court should never impose formal requirements beyond those in the statute.").

Moreover, we believe that Sadie's proposed rule—that the witnesses must sign on the same page as the testator, or on physically connected pages—would not serve the purpose of ET § 4-102, "to prevent the practice of imposition and fraud upon testators." *Slack*, 368 Md. at 17. To the contrary, we believe that Sadie's rule would result in the invalidation of numerous wills that otherwise comply with the statutory requirements and present no evidence of fraud. As the Court of Special Appeals noted,

> One need not strain to consider the unfortunate results that could occur when a will is drafted on word-processing software, as most undoubtedly are these days. Even if the places for the witnesses' signatures are initially adjacent to the testator's, the slightest revisions or additions to the body of the will may send them to a new page, presumably in violation of the strict rule that [Sadie] advances. The results may attend changes to the font, font size, or margins. Facing such potentially ruinous results, the testator might have to compose the document on a scroll.

*Castruccio*, 230 Md. App. at 142 n.13. In addition, "the physical-connection rule is fraught with vagueness and uncertainty. Would a paperclip or binder clip suffice? What if

24

someone pinched the pages between her thumb and index finger while the witnesses signed? What if the pages were pressed together under a paperweight?" *Id.* at 143.

For all of these reasons, we conclude that attestation does not require the witnesses to sign on the same page as the testator, or on physically connected pages. Instead, attestation requires (1) that two or more credible witnesses sign the will in the presence of the testator, and (2) that the witnesses either observe the testator sign the will, or that the testator acknowledges his signature on the document or acknowledges that the document is his will.

In this case, three credible witnesses observed Peter sign on page 5 of 6 of the 2010 Will, and Peter informed the witnesses that the document was his will. After having witnessed this, the three witnesses each signed on page 6 of 6 of the 2010 Will. Whether they were physically connected or not, all six pages of the document were in the room, together, at the time of signing. The six pages are consecutively numbered, the font and typeface are consistent throughout, and the text flows continuously from one page to the next. "[T]hey are connected by their internal sense by coherence or adaptation of parts" and "the papers themselves bear intrinsic evidence that, while separate, they were tacked together in the mind of the testator." *Swaim*, 78 S.E. at 73.

The evidence does not reveal whether the pages were physically connected to each other at the time of signing, but this fact is immaterial to the Will's validity. Regardless of whether the last two pages (or any of the pages, for that matter) were physically connected, it is clear from "the papers themselves" that they were intended to form a single document constituting the 2010 Will. Attestation does not require that the witnesses sign on the same

page as the testator, or on physically connected pages. Therefore, the fact that the last two pages of the 2010 Will may not have been physically connected at the time of signing does not render the Will invalid, nor prevent the presumption of due execution from attaching to it. Accordingly, we hold that the circuit court did not err in denying Sadie's cross-motion for summary judgment as to Issue F (attestation).

**B.** ***Imperfect Attestation Clause and the Presumption of Due Execution***

Next, Sadie argues that the 2010 Will is invalid because it does not contain a "proper attestation clause," and "it expressly states [that] the pages were initialed [by Peter], but they were not." Alternatively, Sadie argues that even if these deficiencies do not necessarily invalidate the 2010 Will, they nonetheless should prevent the presumption of due execution from attaching to it. Therefore, Sadie asserts that she should not have been required to rebut the presumption by clear and convincing evidence. Accordingly, Sadie contends that the circuit court erred by granting summary judgment in favor of the Estate on all transmitted issues.

The Estate and Darlene respond that these purported deficiencies do not invalidate the 2010 Will because neither a "proper attestation clause" nor having the testator initial each page are requirements for a valid will. Furthermore, the Estate and Darlene maintain that even if the attestation clause in the 2010 Will was itself insufficient to give rise to the presumption of due execution, the Will contained other sufficient indicia of due execution such that the presumption should attach. Additionally, the Estate and Darlene assert that Sadie produced no evidence to rebut the presumption of due execution, let alone clear and

26

convincing evidence. Therefore, the Estate and Darlene contend that the circuit court properly granted summary judgment in favor of the Estate on all transmitted issues.

Sadie is correct that page 5 of 6 of the 2010 Will states that Peter has "initial [sic] each page hereof," when in fact he did not, as his initials do not appear on any pages of the Will. However, Sadie cites to no authority, and we have found none, supporting her position that this error either invalidates the Will or prevents the presumption of due execution from attaching to it. We see no reason why an error such as this—stating that the pages were initialed when in fact they were not—should either invalidate an otherwise valid will or prevent the presumption of due execution from attaching to it, so long as the will contains sufficient other indicia of due execution. Having the testator initial each page of a multi-page will is not required by statute, and therefore we decline to impose such a requirement here. *See* Restatement (Third) of Property (Wills & Don. Trans.) § 3.1, cmt. f ("A court should never impose formal requirements beyond those in the statute.").

Turning to the allegedly "improper" attestation clause, we note that the attestation clause appearing in the 2010 Will is admittedly imperfect. It states,

> The above named individual, does declare for his Last Will and Testament this instrument, have hereunto subscribed to have witness on the date **last mentioned above**, and at the location, and [//[4]] I do hereby attest that the testator to be of sound mind, fully able to understand this instrument, and the testator voluntarily and freely did sign same.

---

[4] These symbols have been inserted to indicate the page break between the bottom of page 5 of 6 and the top of page 6 of 6 in the 2010 Will.

The attestation clause does not recite the statutory requirement that the witnesses signed the Will "in the presence of the testator." *See* ET § 4-102(3). Thus, it does not "recite[] the formalities required by the jurisdiction in which the instrument might take effect (such as where the will might be probated)." *Slack*, 368 Md. at 8 n.5 (quoting Black's Law Dictionary 124 (7th ed. 1999)). As such, the attestation clause in the 2010 Will, standing alone, does not provide prima facie evidence for the validity of the Will. *See Van Meter*, 183 Md. at 617–18 ("[A]n attestation clause **reciting facts necessary for the valid execution of a will** is prima facie evidence of the due execution of the will, if it bears the genuine signatures of the testator and subscribing witnesses." (emphasis added)).

However, as discussed earlier in this opinion, we agree with the Estate and Darlene that an attestation clause is not a requirement of a valid will, and therefore an "improper" or incomplete attestation clause does not serve to invalidate an otherwise valid will. "The validity of the execution of a will depends, not upon an attestation clause, but upon conformity of the execution with the requirements of the statute, and also the testimony of the subscribing witnesses if they are produced and examined." *Id.* at 617; *see also Slack*, 368 Md. at 8 n.5 ("A formal attestation clause is not an essential part of a will."). Nor is a "proper" attestation clause required for the presumption of due execution to attach to a will. *See Slack*, 368 Md. at 12 ("[A]n attestation clause is not the *sine qua non* of the presumption of due execution."). "[I]n the absence of an attestation clause, if a proponent of a testamentary document can adduce sufficient evidence from the document and/or surrounding circumstances to make a *prima facie* case for the satisfaction of the statutory

requirements for execution of a will, the presumption of due execution attaches." *Groat*, 213 Md. App. at 156–57 (citing *Slack*, 368 Md. at 12).

In this case, the circuit court did not err in finding "sufficient evidence from the document and/or surrounding circumstances to make a *prima facie* case for the satisfaction of the statutory requirements for execution of a will," *id.* at 157, and thus properly found that the presumption of due execution attached to the 2010 Will. Although the attestation clause itself is imperfect, each of the three witnesses signed their names under the word "WITNESS:." *Cf. Slack*, 368 Md. at 12 (that "[t]he two witnesses, in the presence of the testator, signed beneath the words 'Witnessed By'" provides an indication of due execution). The witnesses' signatures all appear on the same page, which is the next consecutively numbered page following the one that contains the testator's signature. *Cf. id.* (that the testator's signature "was nearly adjacent to the signatures of the witnesses" provides an indication of due execution). Additionally, the imperfect attestation clause includes a recitation of some (though not all) of the statutory requirements for execution of a will, including witnessing Peter sign the will and a statement of Peter's testamentary capacity.

Furthermore, the "surrounding circumstances" in this case provide additional evidence of satisfaction of the statutory requirements. All three witnesses testified that they observed Peter sign the 2010 Will, that he declared the document to be his will, and that they all signed the Will in his presence and in the presence of each other. *See Van Meter*, 183 Md. at 617 ("The validity of the execution of a will depends, not upon an attestation clause, but upon conformity with the requirements of the statute, **and also the**

29

**testimony of the subscribing witnesses if they are produced and examined**." (emphasis added)).

Therefore, based on the document itself and the circumstances surrounding its execution, we conclude that the circuit court did not err in finding sufficient evidence "to make a *prima facie* case for the satisfaction of the statutory requirements for execution of a will," *Groat*, 213 Md. App. at 157, and thus finding that the presumption of due execution attached to the 2010 Will.[5]  Accordingly, the circuit court did not err in granting summary judgment in favor of the Estate on all transmitted issues.

## C.     *Disputed Facts*

Finally, Sadie argues that the circuit court erred in granting summary judgment in favor of the Estate because she produced evidence that generated disputed issues of material facts.  Specifically, Sadie contends that the 2010 Will admitted to probate did not match the physical description of the will provided by Mr. Greiber and Samantha in their depositions.  Both Mr. Greiber and Samantha testified that they remembered that the 2010 Will was stapled when it was signed, and Samantha recalled that Peter had initialed each page.  The Will admitted to probate, however, bore no indication of ever having been stapled, and did not contain Peter's initials on any of the pages.  Sadie contends that whether the Will was stapled and initialed are material facts bearing on its validity, and

---

[5] Sadie only argues that the circuit court erred in finding that the presumption of due execution attached to the 2010 Will.  She does not argue, in the alternative, that if the presumption did attach, she nonetheless produced clear and convincing evidence to rebut the presumption.  Therefore, we need not consider whether Sadie produced sufficient evidence to overcome the presumption of due execution regarding the 2010 Will.

therefore the circuit court erred in granting summary judgment in favor of the Estate.  The Estate and Darlene do not respond to Sadie's argument regarding disputed issues of material facts.

"A material fact is a fact the resolution of which will somehow affect the outcome of the case.  Consequently, a dispute over a non-material fact will not preclude summary judgment." *King v. Bankerd*, 303 Md. 98, 111 (1985) (citation omitted).  In other words,

> [m]erely proving the existence of a factual dispute is not necessarily fatal to a summary judgment motion.  A dispute as to facts relating to grounds upon which the decision is not rested is not a dispute with respect to a *material* fact and such dispute does not prevent the entry of summary judgment.

*Boland*, 423 Md. at 366 (citations and internal quotation marks omitted).

As discussed in Part A above, whether the 2010 Will was stapled at the time of signing has no bearing on its validity.  As such, resolution of this disputed fact would not affect the outcome of the case.  Indeed, in granting the Estate's motion for summary judgment, the circuit court "proceeded . . . on the assumption . . . that the separate sheets of the Will were not mechanically affixed by a staple or other device and were not so affixed when deposited with the Register of Wills for safekeeping on November 17, 2010." Therefore, the dispute about whether the 2010 Will was stapled at the time of signing "relate[d] to grounds upon which the [circuit court's] decision [was] not rested." *Boland*, 423 Md. at 366.  Similarly, as discussed in Part B above, whether the 2010 Will was initialed by Peter also has no bearing on its validity.  Accordingly, resolution of this disputed fact would not affect the outcome of the case.

31

Sadie contends that these disputed facts are material because the contrary descriptions of the 2010 Will by the witnesses indicate that the will that was signed by Peter and the three witnesses on September 29, 2010 might not be the same will that was admitted to probate. However, in order to defeat summary judgment, "[a] plaintiff's claim must be supported by more than a 'scintilla of evidence[,]' as 'there must be evidence upon which [a] jury could reasonably find for the plaintiff.'" *Blackburn Ltd. P'ship v. Paul*, 438 Md. 100, 108 (2014) (second and third alterations in original) (quoting *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 738–39 (1993)). Furthermore, when a witness to a testamentary document provides testimony that is contrary to the description provided in the document itself, "[t]he court views such contradictory testimony with great caution and scans it with grave suspicion[.]" *Van Meter*, 183 Md. at 618; *see also Slack*, 368 Md. at 15 ("This Court and most other state courts consistently have found that a witness' inability to remember certain events should not overcome the presumption of due execution.").

Therefore, we conclude that Mr. Grieber's and Samantha's inaccurate recollections about whether the 2010 Will was stapled and initialed on each page at the time of signing were insufficient to generate disputed issues of material fact. Accordingly, the circuit court did not err in granting summary judgment in favor of the Estate on all transmitted issues.

## CONCLUSION

The statutory requirements for a validly executed will are that it must be "(1) in writing, (2) signed by the testator, or by some other person for him, in his presence and by his express direction, and (3) attested and signed by two or more credible witnesses in the presence of the testator." ET § 4-102. When the testator and the witnesses sign on separate

32

pages of a multi-page will, attestation does not require that the pages be "physically connected" at the time of signing. Furthermore, neither a complete attestation clause nor having the testator initial each page of the will are requirements for valid execution. Therefore, the absence of these elements in a testamentary document does not serve to invalidate the will, nor prevent the presumption of due execution from attaching to it.

In this case, the Estate and Darlene produced "sufficient evidence from the document and/or surrounding circumstances to make a *prima facie* case for the satisfaction of the statutory requirements for execution of a will." *Groat*, 213 Md. App. at 157. Thus, the circuit court properly found that the presumption of due execution attached to the 2010 Will, and Sadie does not argue that she produced clear and convincing evidence to overcome the presumption. Therefore, the circuit court correctly denied Sadie's cross-motion for summary judgment as to Issue F (attestation), and properly granted the Estate's motion for summary judgment on all transmitted issues. Accordingly, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

# APPENDIX

# PETER ADALBERT CASTRUCCIO

FILED

FEB 21 2013

REGISTER OF WILLS
ANNE ARUNDEL COUNTY, MD

I, **PETER ADALBERT CASTRUCCIO**, residing at 8229 Anglers Edge Trail, Glen Burnie, Maryland 21060, being of sound and disposing mind, memory and understanding, do hereby voluntarily make, publish and declare this instrument as his WILL IN TESTAMENT, thereby revoking any and all previous Wills and Codicils herein before made by me.

**WHEREAS**, it is my intention that on my death, all provisions of this instrument will constitute my Last Will In Testament; therefore, I do hereby declare the following:

## ITEM 1: RIGHTS AND OBLIGATIONS OF MY PERSONAL REPRESENTATIVE

I do hereby nominate, constitute and appoint my friend and counsel of many years, JOHN RALPH GREIBER, JR. to act as my Personal Representative for the administration of my Estate. To that affect, I do confer upon my Personal Representative the following rights and obligations:

1.  I do hereby express the desire that my Personal Representative pay my just debts, final expenses and taxes, as soon as practical after my death. Firstly out of cash or liquid assets within my Estate, secondly by of the sale of any personal property in my Estate, and thirdly out of any real estate which is subject to my control and disposition.

2.  I do hereby direct that my Personal Representative pay from my Estate, primarily from the residuary clause, all government, Estate or inheritance taxes, which may be due and payable by reason of my debt, without requiring contribution from anyone, who, in the absence of this exoneration, would be liable for payment of any portion of such taxes by virtue of the inheritance of the status of beneficiary.

3.  I do hereby request that my Personal Representative be excused from the necessity of giving bond, unless absolutely required by law, and in that event, my Personal Representative shall give such bond in such minimum amount as would be required by law.

4. For any and all activities of my Personal Representative, I do hereby direct and request that he be relieved from the necessity of securing any previously obtained authority or subsequent ratification from any court, to perform the activities of Personal Representative.

5. My Personal Representative shall not be liable for any act or omission on his part which results from mere negligence, unless such activity by the Personal Representative constitutes fraud or willful misconduct.

6. My Personal Representative is hereby authorized to sell, lease, give option, or otherwise dispose of any and all property constituting a part of my Estate, whether real, personal or mix, at either public or private sale, all within the performance of the activities of the Personal Representative in the furtherance of administering my Estate.

7. I do hereby direct that my Personal Representative pay the cost of any and all funeral expenses and that these cost be paid out of the funds available in my Estate.

8. I do hereby authorize my Personal Representative to carry on my business for such a reasonable period of time as is necessary to bring the business to a orderly conclusion, or, if in the discretion of the Personal Representative, to continue to carry on such business for such a reasonable period of time as maybe appropriate for the eventual termination of my Estate, whereby I hereby authorize my Personal Representative to act with the same authority which I may have had in the conduct of such business.

9. I hereby authorize my Personal Representative to be empowered, by sale or otherwise, to deal with any personal property in my Estate, including stocks, bonds, securities or other similar matters, including the right to cast vote on such securities, either in person or by limited general proxy.

10. My Personal Representative is hereby authorized to enforce, compromise and/or litigate any claim against or in favor of my Estate.

11. My Personal Representative is hereby authorized to execute such guarantees and indemnity agreements binding upon my Estate, which, in his sole discretion, are appropriate to the handling of the administration of my Estate.

12. My Personal Representative is hereby authorized to prepare, file and execute in my name, or on behalf of my Estate any and all income or other Tax Returns.

13. My Personal Representative is hereby authorized to exercise any and all other powers which are reasonable and necessary for the proper handling of the administration of my Estate.

14. The enumeration of the foregoing powers are given for the purpose of enumerating some of the power of my Personal Representative, and not by way of limitations; therefore, any and all other powers permitted to Personal Representatives, under the laws of the State of my residence at the time of my death are expressly granted unto my Personal Representative.

## ITEM 2: SURVIVAL OF BENEFICIARY

If any beneficiary or beneficiaries under this instrument, and I should die in a common disaster or accident, or under such circumstances that it is doubtful as to which of us died first, then all provisions of this Will shall be effective as though any such beneficiary or beneficiaries shall have predeceased me. Further, in the event that any beneficiary under this Will shall die within (30) days after my death, then such beneficiary shall be deemed to have predeceased me, and I direct that the provisions of this Will shall be construed upon that assumption.

## ITEM 3: MEMORANDUM OF INTENT

All the bequests contained in my Will are absolute, it is my desire that any memorandum which I may leave, addressed to my Personal Representative, or to any beneficiary, indicating my desire with regard to the disposal of any item of my Estate, or manner of handling my Estate, shall be given due regard in so far as it is deemed practical in the sole discretion of my Personal Representative, and provided these directions are otherwise legal.

## ITEM 4: PRIOR DISTRIBUTION OF BEQUEST

As to any specific item of property, whether real, personal or mix, indicated to be left to a beneficiary, under the provisions of this Will, if such beneficiary shall have received all or part of any such asset prior to the final administration of my Estate, then I do direct that my Personal

Representative deduct from the Estate to be received by such beneficiary all such advances made to such beneficiary.

## ITEM 5: ADVANCES TO BENEFICIARIES

By his sole discretion, my Personal Representative shall be empowered to make such advances of assets to any such beneficiary mentioned herein, provided such advances made prior to final administration of this Estate, shall be taken to reduce the eventual distribution to any such beneficiary.

## ITEM 6: EFFECT OF UNSUCCESSFUL ATTEMPT TO VOID

In the event that any party, whether they are a beneficiary or not, shall file any proceeding in an attempt to void any and all provisions of this instrument, in that event, such party shall receive no benefits whatsoever from my Estate, in the event that such proceedings are unsuccessful.

## ITEM 7: CASH BEQUESTS

The following individuals shall receive cash bequests, prior to any bequest to my beloved wife:

1. **DARLENE BARCLAY**, 107 Foxhound Drive, Glen Burnie, Maryland, 21061, Eight Hundred Thousand Dollars ($800,000) which includes the Four Hundred Thousand Dollars ($400,000) already set aside with Wachovia.

2. **ADRIANA LANATA**, Via Trieste 45, Chiavari 16043, Italy, One Hundred Thousand Dollars ($100,000)

3. **ERNEST STINCHCOMB, JR.,** 1141-B Dicus Mill Road, Millersville, Maryland, 21108, One Hundred Thousand Dollars ($100,000)

## ITEM 8:

To my loving wife, Sadie, excluding the individual bequest made in Item 7, I leave the rest and remainder of my Estate to her should she one, survive me and two provided she has made and executed a Will prior to my death.

## ITEM 9: PERSONALITY

I have instructed my friend and Attorney of many years to draft a letter, which we have discussed, to advise my family members of my demise and reasons for the beneficiary distribution of my estate.

## ITEM 10: RESIDUARY CLAUSE

Should, at the time of my death, my beloved wife not have a valid Will filed with the Register of Wills in Anne Arundel County dated prior thereto these, I hereby give, devise and bequeath all the rest and residue of my Estate and property, whether imposition, expectancy will remainder, including all property over which I may have Power of Appointment to the following individuals share and share alike per stirpes and not per capita to DARLENE BARCLAY, 107 Foxhound Drive, Glen Burnie, Maryland, 21061.

ITEM 11.    As above noted, should any beneficiary be deceased at the time of his or her distribution under the proceeds of my last Will, it is my express intention that his or her share shall be distributed to his or her heirs equally.

**IN TESTIMONY WHEREOF,** I, the above mentioned testator have hereunto set my hands and seals to this six page instrument, and have initial each page hereof, which instrument is intendant to be my Last Will and Testament, this _29th_ day of September, 2010.

PETER ADALBERT CASTRUCCIO

SIGNED, SEALED, PUBLISHED AND DECLARE, BY PETER ADALBERT CASTRUCCIO.

The above named individual, does declare for his Last Will and Testament this instrument, have hereunto subscribed to have witness on the date **last mentioned above,** and at the location, and

I do hereby attest that the testator to be of sound mind, fully able to understand this instrument, and the testator voluntarily and freely did sign same.

WITNESS:

Signature, residing at:
11 Hull Avenue
Annapolis, MD 21403


WITNESS:

Signature, residing at:
7022 3rd Ave.
Glen Burnie, MD
21060

WITNESS:

Signature, residing at:
11 Hull Ave
Annap MD 21403